## GORMLEY v. UNITED STATES.

### No. 5716.

Circuit Court of Appeals, Fourth Circuit.

April 1, 1948.

Richard L. Merrick, of Washington, D. C. (Andrew W. Clarke, of Alexandria, Va., on the brief), for appellant.

Philip R. Monahan, Atty., Department of Justice, of Washington, D. C. (T. Vincent Quinn, Asst. Atty. Gen., George R. Humrickhouse, U. S. Atty., of Richmond, Va., and Robert S. Erdahl, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.·

This is an appeal in a criminal case in which the defendant, one George Aloysius Gormley, was convicted of violating 18 U.S.C.A. § 80, which provides:

"* * * whoever shall knowingly and willfully * * * make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, in any matter within the jurisdiction of any department or agency of the United States * * * shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

The indictment contained one count which charged that the defendant and one Louis Vincent Dionne "on or about the 10th day of December, 1946, at Alexandria, Virginia, * * * did unlawfully, wilfully and feloniously use, and cause to be used, a receipt and voucher, to-wit, a War Assets Sales Document No. 4784257, knowing the same to contain a fraudulent and fictitious statement and entry in a certain matter within the jurisdiction of * * * the War Assets Administration at Alexandria, Virginia * * *." The defendant pleaded not guilty and was tried before a jury in the District Court of the United States for the Eastern District of Virginia.

Defendant urges upon us several alleged errors as grounds for a reversal. The first question is whether there was sufficient evidence to take the case to the jury. We think the evidence clearly sufficient and a brief summary of it follows:

Dionne, an admittedly dissolute character, who was jointly indicted with the defendant and entered a plea of guilty when arraigned, was in charge of the traffic unit of the War Assets Administration, Washington Quartermaster Depot, Cameron, Fairfax County, Virginia. His duties included the making of arrangements for the shipment of goods which had been purchased from the War Assets Administration.

When surplus property was sold, a record was made on a form known as a sales document which was made up in a set consisting of an original and six copies, numbered 1 to 7 inclusive. This record went to the cashier to whom payment was

made. He stamped the record paid and signed his name thereon, the writing carrying through the carbons on all six copies. Then copies 4 and 5 of the sales document were sent to the traffic unit (Dionne) for shipping instructions and from there to the Quartermaster's Department where instructions were issued to the warehousemen to fill the order and ship the goods in accordance with the information contained on copies 4 and 5 of the sales document.

In the fall of 1946, Dionne was introduced to the defendant by one Frank Coogler, a freight solicitor for a transfer company, which hauled goods from the Cameron Depot. Dionne, Coogler and the defendant concocted a scheme for fraudulently obtaining a large amount of surplus 36-ounce melton cloth from the War Assets Administration by falsely altering certain copies of the sales document. Pursuant to this plan, the defendant, on December 6, 1946, bought at the War Assets Administration's sale 10,000 yards of 36-ounce melton cloth at the price of $2.40 per yard for which he gave his check drawn on the Riggs National Bank of Washington, D. C., in the sum of $24,000.

In accordance with the standard procedure at the Depot, the sales document was made out, and copies 2, 3, 6 and 7 were forwarded with defendant's check to the Richmond Regional Office. Copies 4 and 5 went to the traffic unit where Dionne, according to his own testimony, altered copies 1, 4 and 5 so that the yardage called for on the sales document was increased by 30,000 yards and the purchase price by $72,000. These altered copies 4 and 5, which now showed a total of 40,000 yards instead of 10,000 and the amount paid as $96,000 instead of $24,000, were sent on to the delivery department of the Quartermaster Depot where shipping orders were prepared in accordance with the altered figures.

Dionne turned copy 1 of the sales document over to Coogler which was the authority for the transportation company (of which Coogler was the agent) to pick up the goods when the shipping order had been filled at the warehouse. Consequently, approximately 40,000 yards of 36-ounce wool melton cloth were shipped from the warehouse to George A. Gormley, the defendant, and by him were resold to one Henry Marks, who was in the woolen business in New York. For his part in the transaction, Dionne testified that he was paid $7,000 by Coogler.

The defendant testified in his own behalf that he learned from Coogler of certain surplus cloth which was for sale by the War Assets Administration. Accompanied by Coogler and another man, he inspected the cloth, and about a week later, on December 6, 1946, after arranging for its resale through one Aldus H. Turner, he purchased 10,000 yards of the melton cloth at $2.40 per yard. At the time of this purchase, according to the defendant's testimony, Dionne told him that there was on hand in the warehouse a large quantity of melton cloth which had become mildewed and which could be purchased at approximately sixty cents a yard, or an average of $1.07 per yard, including the 10,000 yards of undamaged cloth already bought.

On the night of this purchase, defendant stated that in response to a telephone call from Coogler, he went to Dionne's hotel and was informed by Dionne that there were only 30,000 yards of the mildewed cloth remaining in the warehouse and that it would cost $19,000 more. Dionne then said he had made arrangements for defendant to purchase the 30,000 yards, and to make payment therefor after its resale.

A prospective purchaser, Henry Marks, was called in New York by Turner. Marks came to Washington, inspected the cloth and agreed to buy the entire yardage at $1.32½ per yard or a total price of $53,000. He paid the defendant $28,000 in cash and $25,000 by check. The defendant testified that he, in turn, paid Dionne $19,000 in cash and quoted Dionne as saying that "it was a feather in his cap to get rid of that mildewed stuff for the Government."

█ The jury rejected as untrue (quite correctly, we believe,) the defendant's version of the transaction, and our inquiry is limited to whether the verdict finds support in the evidence. There is no question but that the sales document, of which copies 2, 3, 5, 6 and 7 were offered in evidence,

had been altered and as a consequence of this alteration defendant procured 40,000 yards of cloth rather than the 10,000 yards he had actually purchased. Dionne testified that he made these alterations at the inducement and on the instructions of defendant and Coogler, and one who aids, abets, counsels or procures the commission of an offense against the United States is guilty as a principal. 18 U.S.C.A. § 550. Furthermore, an official of the Cameron Depot testified that there was no mildewed melton cloth on hand and none for sale at a reduced price; Marks testified that at no time during the negotiations over the resale of the cloth was any mention made of any mildewed or damaged cloth. No evidence whatever was introduced to show that any of the cloth obtained by defendant actually was mildewed. A careful examination of this entire record convinces us that the case made by the Government and believed by the jury was amply sufficient to convict the defendant.

Although no objection was made at the time of the trial, counsel for the defendant now challenges the following charge of the trial judge:

"The United States, gentlemen, has introduced in this case one party who participated, according to the testimony of witnesses, in the offense charged in this indictment and he occupies the position in law of accomplice.

"It is the general principle in considering the credibility of witnesses that the testimony of an accomplice is open to suspicion or may be actuated by self-interest and such testimony should be carefully weighed and tested before giving it unlimited credence. As a general principle it is not safe to accept (it) as conclusive, unless it is corroborated by testimony of other persons or facts and circumstances clearly tending to prove it.

"However, the Court charges the jury that the testimony of an accomplice is competent evidence and it is for the jury to pass upon the credibility of such testimony and if the testimony of an accomplice carries conviction and the jury are convinced it is true, the jury should give it the same effect as would be allowed to a

witness not in any respect implicated in the offense."

In Caminetti v. United States, 242 U.S. 470, 495 37 S.Ct. 192, 198, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas. 1917B, 1168, the Supreme Court laid down the following rule concerning the testimony of an accomplice:

"It is urged as a further ground of reversal of the judgments below that the trial court did not instruct the jury that the testimony of the two girls was that of accomplices, and to be received with great caution and believed only when corroborated by other testimony adduced in the case. * * * In Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann.Cas. 778, this court refused to reverse a judgment for failure to give an instruction of this general character, while saying that it was the better practice for courts to caution juries against too much reliance upon the testimony of accomplices, and to require corroborating testimony before giving credence to such evidence. While this is so, there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."

And Judge Rose, speaking for our Court in Hoback v. United States, 4 Cir., 296 F. 5, 8, and discussing the reception of an accomplice's testimony and the necessity for corroborative evidence, said:

"In the federal courts, there is no hard and fast rule requiring the corroboration of an accomplice, although they recognize that it is well for the judge to call the attention of the jury to the frequently untrustworthy character of such evidence, and for him to suggest that they should scrutinize it with caution and should not accept it, unless it so far harmonizes with the other testimony in the case as to leave in their minds no reasonable doubt of its truth."

The charge of the learned judge below more than met these requirements in all respects. There was no error in this instruction and the jury was properly cautioned. The credibility of the accomplice and the weight to be given his testimony were within the peculiar province of the

458

jury and without the boundary of judicial review. See United States v. Manton, 2 Cir., 107 F.2d 834.

■ The defendant next contends that the Government should not have been permitted to introduce in evidence the check for $24,000 with which the defendant paid for the 10,000 yards of cloth on December 6, 1946, the bank record of the defendant showing that his balance on that day was only $41.18, and the fact that the check was subsequently dishonored. It is alleged that this evidence was irrelevant to the actual crime charged and tended to prejudice the minds of the jurors against the defendant. We think this evidence was admissible in order to give the jury a full picture of the whole transaction.

■ Whether a particular circumstance is so closely interwoven with the primary deed as to constitute a piece in the pattern of the episode in its entirety, hence necessary to set off the charge on trial in proper perspective, must be determined in the light of the particular facts of each case. Alderman v. United States, 5 Cir., 31 F.2d 499. Here the dishonored check and the record of the defendant's bank account were links in the Government's chain of evidence which tended to show that the defendant knowingly obtained without payment $72,000 worth of cloth through the fraudulent alteration of the sales document. This evidence was thus closely enough connected with the ultimate fact in issue as to be relevant and admissible.

The necessity for depositing sufficient funds in the bank in time to cover the check for $24,000 serves, moreover, to explain why the defendant was willing to resell the melton cloth at $1.32½ per yard while the actual price at which the War Assets Administration was selling it was $2.40 per yard. The defendant was procuring $96,000 worth of goods for $24,000 and intended to dispose of them before the check arrived at the bank upon which it was drawn. He was obviously gambling upon a quick turn-over of the cloth.

After the charge to the jury but before its retirement to consider the verdict, the trial judge at the request of the foreman of the jury, permitted the jury to see and inspect one of the rolls of cloth. During the progress of the trial it had been stipulated that this roll was part of the cloth involved in this transaction and that it was present in the Court House. The roll of cloth, however, had not been formally offered or received in evidence.

■ Counsel for defendant maintain that the trial judge thereby committed reversible error. They assert that from an examination of this particular roll, the jury would infer that all of the cloth shipped was of like quality and condition and thus conclude that none of the cloth was mildewed, contrary to the testimony of the defendant. The stipulation, however, was for all practical purposes, equivalent to the formal introduction of the roll of cloth in evidence and was made in order to obviate the necessity of bringing the bulky material into the Court Room, even though the prosecution had offered to do so.

■ It is true that in order to be admissible, a sample must be fairly representative of the entire quantity, E. K. Hardison Seed Co. v. Jones, 6 Cir., 149 F.2d 252; Pennsylvania R. R. Co. v. Fox & London, Inc., 2 Cir., 93 F.2d 669. The trial judge, however, sufficiently protected the defendant's rights in this regard by the following instruction to the jury:

"Gentlement of the jury, the roll of cloth that has been brought in before you, it is agreed between the parties, is one of the rolls of cloth that counsel yesterday or day before stipulated and agreed were in the corridor just outside the Court Room and is one of the rolls involved in this transaction described in this case. Of course, it is not all of the cloth that was involved in the transaction and in letting it in, bringing it in before you, the Court does not intend to represent to you that all of the cloth was alike or unlike this roll, but simply brought in as one of the rolls that the Government offered to bring in and show to you either yesterday or the day before."

This admonition was clear and explicit and should have left no doubt in the minds of the jurors. In view of the stipulation and the corrective check kept on the jury's inspection by the instruction, we think that

no reversible error was committed. While counsel for defendant objected to any view of the cloth by the jury, no motion for a mistrial was made. See Skiskowski v. United States, 81 U.S.App.D.C. 274, 158 F.2d 177, 182; Townsend v. United States, 3 Cir., 106 F.2d 273, 274, 275. Rule 52(a) of the Federal Rules of Criminal Procedure 18 U.S.C.A. following section 687, ·was clearly intended to take care of just such a situation as this.

 Nor is there any merit in defendant's other ground for reversal here that the trial judge in effect reopened the case to allow the prosecution to introduce new evidence and virtually did away with defendant's right of cross-examination. Even if this action did amount to a reopening of the case, it was clearly within the discretion of the trial judge.

A careful study of the entire record discloses no substantial error in this case and the judgment of the District Court must be affirmed.

Affirmed.