**UNITED STATES of America, Appellee,**

v.

**Leslie William HANS, Appellant.**

No. 83–5447.

United States Court of Appeals,
Third Circuit.

Argued March 5, 1984.

Decided June 19, 1984.

J. Alan Johnson, U.S. Atty., Constance M. Bowden (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

George E. Schumacher (argued), Federal Public Defender, Pittsburgh, Pa., for appellant.

Before HUNTER and BECKER, Circuit Judges, and HOFFMAN *, District Judge.

## OPINION OF THE COURT

HOFFMAN, District Judge.

### I. *INTRODUCTION.*

Following a jury trial in the United States District Court for the Western District of Pennsylvania, Leslie William Hans was convicted of bank robbery. The trial judge sentenced Hans to a total of 25 years imprisonment on the two counts. Hans appeals the conviction to this court, citing five supposed errors by the trial judge in admitting items of evidence, allowing testimony about Hans' possible connection with bank robberies in Michigan, and allowing the jury to inspect items during its deliberations that had not been introduced into evidence.

Although some of Hans' objections are without merit, we feel that the trial judge erred in allowing: (1) the jury to inspect certain items which had been talked about, but not introduced into evidence, (2) an F.B.I. agent to testify in a manner that implied that Hans had committed bank robberies in Detroit and (3) a witness to link Hans to alleged plans to commit future robberies. Because we feel that the first two errors prejudiced Hans' right to a fair trial, we reverse his conviction and remand for a new trial.

### II. *FACTUAL AND PROCEDURAL BACKGROUND.*

On October 28, 1980, three armed individuals, wearing halloween masks, windbreakers and gloves, robbed a branch of the Marine Bank in Erie, Pennsylvania, getting away with approximately $34,000. In November, acting on an informant's tip, the F.B.I. arrested Norman Bauman in Detroit, Michigan for the crime. With Bauman at the time of the arrest, but not themselves then arrested, were Pearl Grzybowski, Hans and Pat Barlow.

Almost all the physical evidence the government introduced against Hans resulted from Bauman's arrest. The F.B.I. obtained warrants to search both Bauman's apartment and a briefcase he was carrying at the time of the arrest. The briefcase contained a police scanner, $4,000 in $100 bills, as well as other items ultimately used as evidence in Hans' trial. Bauman had another $4,000 in cash on his person, as well as a notebook containing references to the Marine Bank in Erie. Following their search of Bauman's apartment, the F.B.I. seized a variety of items, some of them admitted into evidence against Hans, some not. Included in this seizure were the five windbreakers which were marked for identification, but never admitted into evidence.

Bauman himself was never tried; he apparently committed suicide sometime after his arrest. The government then proceeded to try Bauman's girl friend, Pearl Grzybowski, for the robbery. Grzybowski was convicted and sentenced to twenty-five years imprisonment for her part in the robbery. The sentencing judge held out a possibility of a reduction in sentence if she cooperated with the government and testified against the third person involved in the robbery. Almost three months after her sentencing, Grzybowski finally informed the F.B.I. that Hans was the third participant. Although her sentence had not yet been reduced at the time of the Hans trial, Grzybowski testified that she understood that her cooperation would result in a "substantial number of years" being taken off her sentence.

Based on information from Grzybowski, the government secured an indictment of

---

* Honorable Walter E. Hoffman, Senior Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

Hans for violating 18 U.S.C. §§ 2113(a) (bank robbery) and (d) (assault during the commission of a bank robbery). Hans had a three day jury trial in early November, 1981. Most of the physical evidence the government introduced against Hans had been seized from Bauman. Grzybowski's testimony provided the only direct evidence of Hans' involvement in the robbery. The government also introduced evidence to show that Hans had wired Grzybowski $1,000 for bail when she was first arrested.

The jury convicted Hans on both counts, and the judge sentenced Hans to 25 years in prison.

## III. ADMISSIBILITY OF ITEMS SEIZED FROM BAUMAN.

Before trial, Hans objected to the introduction into evidence against him of the items seized from Bauman. Introduced against Hans were the police scanner, the $4,000 in $100 denominations, and Bauman's notebook. Hans contended that these items were both irrelevant to the question of *his* guilt and highly prejudicial. The trial judge overruled all the objections except the ones directed against the introduction of a gun and several bullet-proof vests. The judge ruled the gun inadmissible because it was not clearly of the type carried by the robbers, and he ruled the vests inadmissible because there was no evidence that the robbers had worn vests.

Among the items the judge ruled admissible were the five windbreakers seized from Bauman's apartment. These were identified but never actually offered or admitted into evidence. During its deliberations, the jury asked to inspect the windbreakers. Hans objected to this, arguing that the trial was over and the prosecution had long rested its case. The judge overruled the objection and allowed the jurors to inspect the jackets.

### A. *The Items Actually Admitted Into Evidence.*

Hans argues that everything seized from Bauman was irrelevant to the question of whether Hans participated in the robbery.

He concedes that these items had some relevance to the degree that they corroborated Grzybowski's testimony, but he contends that this minimal relevance is far outweighed by the prejudicial effect on the jury. Hans argues that the trial judge misapplied Rule 403 of the Federal Rules of Evidence by ruling admissible items seized from Bauman.

■ The law in this circuit is clear: a trial judge has broad discretion to evaluate whether the probative value of relevant evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R. Evid. 403; *see United States v. Clifford*, 704 F.2d 86, 89 (3d Cir.1983). Absent a clear showing of abuse of discretion, appellate courts will not disturb a trial judge's ruling under Rule 403. *United States v. Dalfonso*, 707 F.2d 757, 762 (3d Cir.1983).

■ The district judge clearly did not abuse his discretion in allowing most of the evidence seized from Bauman to be introduced into evidence against Hans. Because these items tended to corroborate Grzybowski's testimony, they were relevant. The Federal Rules define "relevant evidence" as evidence with "*any* tendency to make the existence of *any* [material] fact .... more or less probable." Fed.R. Evid. 401 (emphasis added). Under this standard, everything seized from Bauman was relevant.

Moreover, it is clear from the record that the district judge evaluated all the proposed evidence to see whether it presented a danger of unfair prejudice to Hans. The judge ultimately excluded some evidence, such as the handgun and the bullet-proof vests, because of the danger of prejudice to Hans. Under these circumstances, we cannot say that the trial judge abused his discretion by admitting these other items into evidence.

### B. *The Windbreakers.*

At a pre-trial hearing, the district judge ruled that the windbreakers were admissible. Grzybowski testified at that hearing

that, although they were similar to the ones the robbers wore, the windbreakers were in fact not the ones used in the robbery. During the trial itself, the windbreakers were marked for identification, but for some reason they were never actually introduced into evidence. Because they were not admitted into evidence, Hans' lawyer had no need to elicit testimony from Grzybowski that these windbreakers were different from the ones the robbers wore. Soon after the jury began deliberations, it sent a note asking to inspect the windbreakers. Over Hans' strenuous objections, the trial judge granted the request.

■ A jury is bound to decide a case purely on the law and the evidence, it is therefore error for a jury to rely on items not admitted into evidence to reach its verdict. *Government of the Virgin Islands v. Joseph*, 685 F.2d 857, 863–64 (3d Cir.1982). To be reversible, however, the error must be objected to in a timely fashion, and substantial rights must be affected. Fed. R.Crim.P. 52(a); *United States v. Ong*, 541 F.2d 331 (2d Cir.1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).

In *Joseph*, the unadmitted evidence was given to the jury inadvertently, without an objection by defendant's lawyer. The court therefore had to apply a plain error standard in holding that the jury's use of the evidence had prejudiced Joseph's right to a fair trial. Because Hans' attorney made a timely objection to allowing the jury to inspect the windbreakers, we need not resort to a plain error analysis in this case.

■ In urging us to uphold the trial judge's ruling on this point, the government first argues that the judge committed no error. The government cites a number of cases, including *Joseph*, to support its contention that a trial judge commits error only if he allows the jury to examine unadmitted evidence which he previously had ruled inadmissible or on whose admissibility he has not ruled. This argument overlooks the clear language of *Joseph:* "the jury room must be kept free of evidence

not received in the trial, and that its presence, if prejudicial, will vitiate the verdict." 685 F.2d at 863, *quoting Dallago v. United States*, 427 F.2d 546, 553 (D.C.Cir.1969). The error comes not from the inadmissibility of the evidence, but from the jury's reliance on evidence which had not properly been admitted.

■ The government also argues that the trial judge did not err because, in effect, he was permitting the government to reopen its case and move the windbreakers into evidence. To support this position, the government relies primarily on *Gormley v. United States*, 167 F.2d 454 (4th Cir.1948). In *Gormley*, the district judge allowed the jury to inspect a sample bolt of cloth, even though it had not been introduced into evidence. The government had offered to move the introduction of a number of bolts of cloths, but the trial judge had declined the offer because of the great bulk of the cloth. Instead, the parties stipulated that the bolt was "part of the cloth involved in the transaction and that it was present in the courthouse." *Id.* at 458. In addition, the trial court instructed the jury that the sample cloth, though representative of some of the cloth involved in the transaction in question, was not representative of the entire quantity.

The Fourth Circuit concluded that the stipulation was "for all practical purposes, equivalent to the formal introduction" of the cloth into evidence. *Id.* Considering the bulkiness of the cloth, and that the judge had given the jury a cautionary instruction, the Fourth Circuit found no error. This recitation of the facts of *Gormley* makes clear the significant differences between it and the case now before this court. The windbreakers were not cumbersome, in fact they were in the courtroom during the entire trial; the parties never stipulated that these were indeed the windbreakers the robbers had worn; and the trial judge never gave a cautionary instruction. The trial judge should have dealt with the request by allowing the government to reopen its case and move the introduction of the windbreakers. This would

have given Hans the opportunity to recall Grzybowski so she could testify that the windbreakers were not those worn by the robbers.

 The judge therefore clearly erred in allowing the jurors to inspect the windbreakers. The government argues that, even if the judge erred, the error was harmless because "[t]he jackets did not in any way directly implicate the appellant in the robbery." Appellee's brief at 27. This argument verges on the disingenuous. First of all, the only possible reason that the jury could have had to inspect the windbreakers would have been to compare them to those in the bank photographs of the robbers.

During the trial, the government had constantly stressed the windbreakers, both during the testimony of the F.B.I. agents and of the bank's employees. Additionally, although the prosecutor conceded in his opening remarks that there was no evidence that the windbreakers had been used in the robbery, he continued by noting that, if the jurors would "look at the robbers and the pictures I have for you, ... you'll find they're wearing windbreakers similar to the type we recovered." The clear implication of this statement, and of the government's use of the windbreakers at trial, was that these were indeed the robbers' windbreakers, even though the government introduced no evidence to support that conclusion.

Under these circumstances, we cannot declare that the error did not affect substantial rights. The jury's interest in these items of at best marginal relevance indicates that the jurors considered the windbreakers to be important evidence linking Hans to the robbery. The trial judge should at least have afforded the defense the opportunity of informing the jury of Grzybowski's opinion that these were not the windbreakers the robbers had worn.[1]

## IV. ADMISSIBILITY OF EVIDENCE OF OTHER CRIMES AGAINST HANS.

### A. Hans' Conviction for Interstate Transportation of Forged Securities.

In July, 1973, Hans was convicted of violation of 18 U.S.C. § 2314 (interstate transportation of forged securities). Holding this to be a *crimen falsi*, the trial judge allowed the prosecution to use this conviction to impeach Hans on cross-examination.

The Federal Rules of Evidence allow impeachment of witnesses by evidence of prior convictions in two different ways. If the conviction was for a crime punishable by death or imprisonment in excess of one year (a felony), then the trial judge may admit it if he determines that the probative value of admitting the evidence of conviction outweighs its prejudicial effect to the defendant. Fed.R.Evid. 609(a)(1). If, on the other hand, the crime involves "dishonesty or false statement," the trial judge has no discretion and must admit it even if it was a misdemeanor. Fed.R.Evid. 609(a)(2). Normally such evidence is admissible only if either the conviction or the witness' release from prison occurred within 10 years of the trial. Fed.R.Evid. 609(b).

 Hans argues that evidence of his interstate transportation conviction was inadmissible under either 609(a)(1) or (2). He contends, first of all, that the prosecution failed to prove that he was convicted of a felony. This argument is frivolous. Section 2314 states that anyone convicted under that section may be fined up to $10,000 or imprisoned for up to 10 years or both. The trial court therefore properly concluded that Hans had been convicted of a felony.

Having determined that both this conviction and one for assault with intent to

---

**1.** Although the defense could have questioned Grzybowski on the windbreakers on cross-examination, this could only have prejudiced the defense case because she would have testified that Bauman had bought the windbreakers for use in a *future* robbery. Such testimony would have put the windbreakers in the same category as the bullet-proof vests, excluded by the judge as irrelevant and highly prejudicial.

commit armed robbery were felonies, the trial judge then properly applied the balancing test that Rule 609(a)(1) mandates in order to determine whether the probative value of the convictions outweighed their prejudicial effect to Hans. *Government of the Virgin Islands v. Bedford,* 671 F.2d 758, 761 (3d Cir.1982). The trial judge concluded that, although the interstate transportation issue was admissible, the assault conviction was not. He considered this to be too similar to the charge of bank robbery and therefore potentially prejudicial to Hans. Given the fact that the trial judge explicitly weighed the probative value of the convictions against the danger that their introduction would unfairly prejudice Hans, we find no abuse of discretion and therefore decline to reverse on the basis of Rule 609(a)(1).

Nevertheless, even if the interstate transportation conviction was inadmissible under 609(a)(1), it would be admissible under (a)(2). This court recently held that a district court has no discretion to exclude evidence of a prior conviction under Rule 609(a)(2). *United States v. Wong,* 703 F.2d 65 (3d Cir.1983). If a witness has been convicted of a crime involving dishonesty or false statement, he may be impeached through the conviction, even if it was not a felony.

■ Thus, once the trial judge determines that a crime involves dishonesty or false statement, evidence of conviction of that crime automatically becomes admissible for impeachment purposes.

■ For the jury to have convicted Hans of interstate transportation, it must have believed him guilty of transporting "forged securities ... knowing the same to have been ... forged." 18 U.S.C. § 2314. The trial judge focused on the requirement of knowledge and held that interstate transportation is a *crimen falsi.* He therefore ruled that the prosecution could use the conviction to impeach Hans on cross-examination. The only circuit which has examined this question has concluded that the interstate transportation of forged securities "encompasses precisely the kind of dis-

honesty which makes it admissible for impeachment purposes." *United States v. Jackson,* 680 F.2d 561, 564 (8th Cir.1982). We agree with the Eighth Circuit and find no error on this issue.

### B. *F.B.I. Agent McCarthy's Testimony Linking Hans to Bank Robberies in Michigan.*

During the government's case-in-chief, the prosecutor questioned Agent McCarthy concerning how Grzybowski and Hans became suspects. Hans' attorney objected to that line of questioning, but was overruled. When the prosecutor asked McCarthy how the Bureau came to focus on Hans, McCarthy replied:

> After we learned the identity of Norman Bauman and that he was from Michigan, I talked to some agents in our Detroit, Michigan office. I ran by the MO of the robbery to them and the description of the other bank robbers, asked them if they had anyone from that area who might logically fit as a suspect in this matter.

Hans objected to the testimony and at a sidebar the prosecutor told the judge that McCarthy would state that the Detroit agents came up with Hans as a likely suspect. After initially overruling Hans' objection and denying his motion for a mistrial, the trial judge sustained the objection to McCarthy's "last statement" and told the jury to disregard it.

■ Hans argues that the cautionary instruction was insufficient because of the highly prejudicial impact of McCarthy's testimony. The government, on the other hand, dismisses the testimony as "vague in character" and in no way indicating that Hans had ever been convicted of bank robbery. Appellee's brief at 36. The government also argues that McCarthy's testimony was admissible under Rule 404(b) to prove association, i.e., to show that Bauman and Hans knew one another prior to the commission of the bank robbery for which Hans is now charged. *Id.* at 37, n. 10. Both the government's arguments are

disingenuous and attempt to gloss over the seriously prejudicial nature of the testimony. McCarthy's testimony was anything but weak. Stripped to its essentials it was that, based on the *modus operandi* (three armed robbers wearing halloween masks, windbreakers and dark gloves and ranging in height from 5'5" to 5'9"), the Detroit F.B.I. could almost immediately come up with a prime suspect, i.e. Leslie Hans. Even though McCarthy never named Hans to the jury, the only reasonable inference that a reasonable juror could draw from the testimony was that Hans was well-known as a bank robber to the Detroit F.B.I.

Moreover, even if this testimony were admissible under Rule 404(b), it still has to meet the balancing requirements of Rule 403. Not only is this testimony highly prejudicial, but the government had no need to introduce it to show that Bauman and Hans knew each other. The prosecution had already established that Hans, Grzybowski and Hans' girl friend were present when the Detroit F.B.I. arrested Bauman. McCarthy's testimony was therefore cumulative, and excludable on that ground as well.

Because it is difficult to imagine testimony more prejudicial than McCarthy's implication that Hans was known to the Detroit police as a professional bank robber, we feel that the trial judge's error occurred when he failed to sustain Hans' objections to the entire line of questioning from the outset. This is especially true in light of the judge's ruling excluding all evidence of Hans' conviction for assault with intent to commit armed robbery. The judge ruled that inadmissible because the offense was too similar to that charged in this case. Nevertheless, as a result of McCarthy's testimony, the jury was left the probably indelible impression that, like Bauman, Hans was a professional bank robber.

## V. *THE GRZYBOWSKI TESTIMONY.*

Hans' final ground for appeal concerns some of Pearl Grzybowski's testimony, both on cross-examination and on re-direct. In this testimony, she alluded to evidence which the trial judge had ruled inadmissible, as well as to a lie detector test she was supposedly waiting to take. In both cases, the trial judge denied Hans' motion for a mistrial. Hans argues that Grzybowski's testimony was both prejudicial and unresponsive.

### A. *The Bullet-Proof Vests.*

During cross-examination by Hans' attorney, Grzybowski on several occasions volunteered information about bullet-proof vests and flak-jackets. Hans' attorney did not move to strike her answers during cross-examination. He finally moved for a mistrial after she had not only mentioned the vests again during re-direct, but also testified that Bauman had discussed with Hans using them in a future bank robbery. Hans' attorney put forward two grounds to support his motion: that Grzybowski's answers were unresponsive and that they prejudiced Hans because the jury would see them as evidence of future crimes and be more likely to convict.

The trial judge's immediate reaction was to sustain the objection, but he told lawyers that "[w]e'll leave the record where it is." Once the jurors were recalled, the judge gave no indication to them that he was sustaining Hans' objections. Shortly after Grzybowski's testimony, the government rested. The judge excused the jurors and, during the conference that followed, he reversed his prior ruling on Grzybowski's testimony. He concluded that her statements were both spontaneous and responsive and that they were therefore admissible.

The motion for mistrial was not made until the vests had been mentioned by Grzybowski several times. Hans' attorney erred in not bringing Grzybowski's testimony to the judge's attention when she first mentioned the vests, so that the judge could instruct her to not mention them again. Nevertheless, when defense counsel ultimately made an objection, the judge

should have struck the testimony and instructed the jurors to disregard it. However, because we have held that Hans is otherwise entitled to a new trial, we need not reach the question whether the trial judge erred in not granting a mistrial on the basis of this testimony.

### B. *The Lie Detector Test.*

■ During the presentation of Hans' defense, his attorney recalled Grzybowski to question her about a possible reduction in her sentence. In response to a question about whether she had any "understanding" about the impact of her testimony on the reduction of her sentence, Grzybowski replied that she was waiting to take a lie detector test. Hans moved for a mistrial, on the grounds that her answer was unresponsive. The trial judge denied that motion, in essence because an unresponsive answer is not, absent some prejudice, grounds for a mistrial. Based on Hans' failure to argue prejudice and on the relative insignificance of the testimony, we find that the judge committed no error on this point.

### VI. *CONCLUSION*

We find that the trial judge erred in allowing the jury both to inspect the windbreakers and to hear testimony linking Hans to alleged past and future robberies. The error was not harmless. We therefore reverse the conviction and remand the case for a new trial.

JAMES HUNTER, III, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that the conviction of defendant Leslie William Hans must be reversed.

I agree with the majority that the most troublesome issue in this case is the district court's decision to permit the jury to see the windbreakers during their deliberations, in spite of the fact that the windbreakers had not been moved into evidence. Even if this was error, as the majority concludes, I would hold that the error was harmless. Hans had the opportunity to challenge the *admissibility* of the wind-

breakers before trial; only through inadvertence were the windbreakers not actually introduced. At the very outset, the prosecutor informed the jury (in his opening remarks) that the windbreakers seized from Bauman were *similar* to the ones worn in the robbery, but that there was no evidence that they were the *same* windbreakers. There was testimony at trial about the windbreakers seized from Bauman. Thus, Hans had reason and opportunity to elicit testimony from Grzybowski that the seized windbreakers were not the garments used in the robbery.

Citing *United States v. Ong*, 541 F.2d 331 (2d Cir.1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977), the majority holds that the lower court committed *reversible* error because the admission of the windbreakers "affect[ed] substantial rights" of the defendant. Whether the court's conduct "affects substantial rights" depends upon the effect of the challenged conduct on the jury's verdict, an inquiry which requires a scrutiny of the particular facts of the case at issue and the procedural context of the asserted error. *See Ong*, 541 F.2d at 338. Under the circumstances described above, coupled with the fact that the windbreakers had actually been marked for identification, though not formally moved into evidence, I conclude, "beyond a reasonable doubt," that the district court's decision to show the jury the windbreakers "did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705; *see Ong*, 541 F.2d at 338.

I can find no error in the district court's treatment of McCarthy's testimony. The judge called the attorneys to side-bar as soon as Hans' attorney objected to McCarthy's statements about the Detroit F.B.I. When the government explained the nature of the testimony that it planned to elicit, the judge sustained the objection and instructed the jury to disregard McCarthy's "last statement." The cautionary instruction was sufficient in this case to cure any prejudice.

Finally, I would hold that the district court's treatment of Grzybowski's state-

ments concerning the flak-jackets and bullet-proof vests was not reversible error. Grzybowski first mentioned the bullet-proof vests during cross-examination. Her testimony was responsive to counsel's question concerning the length of time that she, Bauman and Hans had been together in Bauman's apartment. She repeated her reference to the vests when Hans' attorney, rather than directing Grzybowski to limit her answer to a specific length of time, twice pressed her, "Can you answer my question?" Hans' attorney first objected to Grzybowski's references when the government attempted to elicit further testimony about the vests on re-direct. The court sustained that objection but let the cross-examination testimony stand. I would find that the district court ruled properly on this point as well.

Accordingly, I would affirm the conviction of Hans.