

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2006

# Keller v. Bucks

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2146

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation
"Keller v. Bucks" (2006). *2006 Decisions.* Paper 36.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/36

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  05-2146

KEVIN KELLER;
BENJAMIN MARTIN

Appellees
v.


COUNTY OF BUCKS;
MICHAEL FITZPATRICK;
CHARLES MARTIN;
SANDRA MILLER, INDIVIDUALLY AND AS
THE BUCKS COUNTY BD. OF COMMISSIONERS;
ADMINISTRATOR GORDIAN EHRLACHER, INDIVIDUALLY
AND AS DIRECTOR, BUCKS COUNTY DEPARTMENT OF HEALTH;
LEWIS POLK, MD, MEDICAL DIRECTOR, BUCKS CO.
HEALTH DEPARTMENT, INDIV. AND AS  DIRECTOR OF
CORRECTIONAL HEALTH SVC. (CHS);
JOAN CROWE, R.N., INDIV. AND AS CHS DIRECTOR AT BCCF;
HARRIS GUBERNICK, INDIVIDUALLY AND AS DIRECTOR, BUCKS CO.
DEPARTMENT OF CORRECTIONS;
WILLIS MORTON, INDIVIDUALLY AND AS WARDEN,
BUCKS COUNTY CORRECTIONAL FACILITY


County of Bucks;
Joan Crowe, RN;
Harris Gubernick;
Willis Morton,

Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No.: 03-cv-04017
District Judge: The Honorable John P. Fullam
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 11, 2006

Before: SMITH and ROTH, *Circuit Judges*,
and IRENAS, *District Judge*[*]

(Filed December 22, 2006)
_____

OPINION
_____

SMITH, *Circuit Judge*.

Kevin Keller and Benjamin Martin were pretrial detainees at Bucks County

Correctional Facility during the periods from June 6, 2002 through November 8, 2002,

and August 7, 2001 through September 12, 2001, respectively. Both men contracted a

bacterial infection known as Methicillin-resistant Staphylococcus Aureus (MRSA),

which manifested itself during their prison stays, and eventually required that each be

hospitalized. On July 7, 2003, they filed suit under 42 U.S.C. § 1983, alleging that the

county and prison officials and prison personnel (collectively "prison defendants") were

deliberately indifferent to their legitimate medical needs, maintained unconstitutional

[*]The Honorable Joseph E. Irenas, Senior District Judge for the United States District
of New Jersey, sitting by designation.

conditions of confinement, and failed to inform them of the dangers of MRSA. After a five-day jury trial, the jury awarded $800,000 to Keller and $400,000 to Martin in compensatory damages for pain and suffering. The prison defendants filed a motion for a new trial and remittitur, which the District Court denied.

The prison defendants now appeal the rulings of the District Court denying their motion for a new trial, denying their motion for remittitur, and disallowing the introduction of impeachment evidence. The three issues presented on appeal are whether the jury's findings are against the manifest weight of the evidence, whether the jury's award of compensatory damages is excessive such that remittitur is appropriate, and whether the trial court erred in refusing to allow prior convictions to be introduced into evidence.[1] The appellants seek a new trial. We will affirm the decision of the District Court.

## I.

The prison defendants claim that a new trial is necessary because the facts do not show deliberate indifference to a legitimate medical need. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) ("Pre-trial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment."). The standard of review for the denial of a new trial at issue here is abuse of discretion. *Pryer v. C.O. 3 Slavic*, 251 F.3d 448,

---

[1]Jurisdiction is appropriate in this Court under 28 U.S.C. § 1291.

453 (3d Cir. 2001) ("We review a district court's order granting or denying a new trial for abuse of discretion...."); *Black v. Stephens*, 662 F.2d 181, 192 n.11 (3d Cir. 1981). This Court reviews the denial of a motion for a new trial by viewing all of the evidence and making all reasonable inferences in the light most favorable to the prevailing party. *Roebuck v. Drexel Univ.*, 852 F.2d 715, 736 (3d Cir. 1988).

As a preliminary matter, Keller and Martin contend that the prison defendants have waived their claim that the verdict was against the manifest weight of the evidence because they failed to raise it in the District Court. No waiver occurred here. In their motion for a new trial pursuant to Federal Rule of Civil Procedure 59, which was expressly incorporated into their amended motion for a new trial, the defendants clearly noted several ways in which the verdict was contrary to the evidence. *See United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) ("A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred.").

A.

To establish a violation of the right to adequate medical care, a plaintiff must show a serious medical need and acts or omissions by prison officials that indicated a deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Turning to the evidence, Martin's testimony showed that he was promptly seen after he signed up on the sick call sheet for permission to go to the dispensary regarding a sore on his leg. Martin also said that he saw the doctor a couple of

4

days following his initial visit, and the doctor ordered antibiotics for him. Unfortunately, the antibiotics were penicillin-based, and Martin discovered that he was allergic to them. His prescription was changed to an antibiotic he could tolerate, but his condition still worsened. On Sunday evening, Martin's infected sore began to discharge. Nurse Crowe only administered Tylenol to him. On Monday morning he visited the prison doctor once more, and he was sent to Doylestown Hospital for treatment. He subsequently underwent multiple surgeries.

Keller testified that he developed bumps under his arms and that he signed up on the sick call sheet in his cell block for a visit to the dispensary. He further explained that the sick call sheet was often misplaced, which frustrated his attempts to see a nurse about his condition.

Keller stated that he attempted to report his problem to a nurse who was administering nasal swabs to all prisoners. He reported that the nurse told him only to sign up for sick call. He developed a scrotal infection, and his condition deteriorated. Keller testified that he signed up for sick call again and asked the block officer for help, but was told to follow the procedure by signing up for sick call.

On August 31, he went to the dispensary without having been called and displayed his infection to the medical staff. A nurse took a culture and he was sent to medical isolation. Keller testified that the conditions in the medical housing unit were highly unpleasant, and that he was subjected to the same conditions as inmates who were in restricted housing due to disciplinary infractions. He stated that he was there for about 36

hours before he was taken to Doylestown Hospital. Keller testified that upon his return from the hospital, the scrotal support device he was provided at the hospital was taken away from him and he was denied bandages for his wound. He was again placed in medical isolation.

Keller and Martin argue that the verdicts are not against the weight of the evidence because the defendants fail to properly acknowledge the facts presented at trial. Keller and Martin assert that the evidence clearly showed that they faced a lack of prompt care for their serious medical needs. The evidence at trial arguably supported both parties' theories of the case and, based on this record, we do not find any abuse of discretion by the trial court. Both Martin and Keller's statements support an inference that the officials here were both aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and they also drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, it was within the trial court's discretion to determine that the verdict was not against the weight of the evidence.

B.

The prison defendants also claim that the verdict was against the weight of the evidence with respect to the conditions of confinement claim. Keller and Martin defend the verdict on the grounds that Keller's placement in restricted isolation was devoid of any rational relationship to a legitimate prison goal or policy, and therefore it amounted to impermissible punishment. *See Hubbard v. Taylor*, 399 F.3d 150, 165 (3d Cir. 2005) ("Whether there is a constitutional violation [in a pretrial detention setting] turns on

6

whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."). Keller and Martin also assert that the verdict is supported by evidence that showed offensive and unsanitary conditions at the correctional facility.

Keller and Martin claim that prison defendants are precluded from challenging the verdict with respect to the conditions of confinement claim because they failed to challenge the claim in any pretrial motions or at the Rule 50 stage. Keller and Martin are incorrect; the prison defendants made a motion for judgment as a matter of law at the close of the evidence. In any event, the failure to move for judgment as a matter of law does not preclude review on a "weight of the evidence" claim. *See Greenleaf v. Garlock*, 174 F.3d 352, 365 (3d Cir. 1999) ("[T]he position that the court, utilizing its authority under Rule 59(a), should critically evaluate the evidence and exercise its discretion in favor of a new trial because the probative evidence in their favor as contrasted with that opposed is overwhelming ... is not a position that can be taken in support of a Rule 50 motion for judgment as a matter of law."). Accordingly, Keller and Martins' waiver argument is unavailing.

In order for conditions of confinement to be unconstitutional, they must be shown to be cruel and unusual under the Eighth Amendment, and the evidence must reveal widespread deprivation of the "minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Suprenant v. Rivas*, 424 F.3d 5, 18 (3d Cir. 2005) ("A pretrial detainee's claim that he has been subjected to unconstitutional conditions of

7

confinement implicates Fourteenth Amendment liberty interests. The parameters of such an interest are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment."). With respect to the isolation of Keller, Keller's argument overlooks the evidence that Keller testified to, namely, that he was put in the medical housing unit both before and after his hospitalization. On both occasions, his isolation immediately followed a medical determination that it was in his interest and the interest of the prison for him to be removed from the general population.[2]

> As the U.S. Supreme Court has explained:
>
> It is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual. If new conditions of confinement are not materially different from those affecting other prisoners, a transfer for the duration of a prisoner's sentence might be completely unobjectionable and well within the authority of the prison administrator. It is equally plain, however, that the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.

*Hutto v. Finney*, 437 U.S. 678, 686 (1978) (internal citation omitted). Keller's testimony suggests that the conditions he encountered in medical isolation were largely similar to those to which the general prison population was exposed. The only significant differences Keller noted between his shared cell block room and the conditions in

---

[2]Keller argues that his isolation was unnecessary because he could have been housed with other MRSA-infected inmates, and thus, his isolation was punitive. The fact that it may have been medically acceptable to house Keller with other infected inmates does not render his isolation unconstitutional. The prison officials had good reason to remove him from the general prison population, and their decision to house him separately does not turn their otherwise legitimate exercise of authority into a constitutional violation.

8

medical isolation were that he was denied canteen privileges, phone access, recreational privileges, and possession of personal effects such as his girlfriend's photograph. Keller was in isolation from September 1 through September 20, 2002, except for the period of time he spent at the hospital. It seems clear that the additional hardship imposed upon Keller with respect to the conditions in isolation fell far below a constitutional violation.

The claim that offensive conditions at the prison created unconstitutional conditions of confinement presents a more difficult question. The District Court stated that "[t]he jury also had a more than sufficient basis for concluding that Defendants through deliberate indifference allowed conditions in the facility that were likely to cause disease, injury, or suffering." The Court cited the failure of the prison defendants to take "necessary steps to minimize the number of inmates affected, for example by keeping the showers and food handling areas in a sanitary condition and instructing inmates on how to avoid the spread of infectious diseases." The fact that conditions were less than optimal, though, does not establish that they deprived the Keller and Martin of the minimal civilized measures of life's necessities merely because they became ill.

Taken as a whole, and considered under the standard of abuse of discretion, we are unable to say that the District Court's opinion with respect to the conditions of confinement claim is error. The conditions described by Keller and Martin were indeed distasteful. According to their testimony, filthy water pooled in the showers, water seeped into the cells, clean laundry was not always readily available, the mattresses were stained,

and mildew grew on walls covered in peeling paint. Compounding this unpleasantness was the fact that the inmates were double-celled.

The Annual Inspection Evaluation Reports for the Bucks County Correctional Facility for 2001 and 2002 indicate that the chief problems facing the facility were lack of proper ventilation, a roof in disrepair, mold, peeling paint, and rust. The bedding was also non-compliant in that the mattresses had cloth covers instead of waterproof covers, but the reports note that a purchase order had been placed for new, compliant mattresses, and the roof had been scheduled for repair. The reports made no mention of standing water in the shower areas or other unhygienic conditions.

To be sure, the presence of contradictory evidence means only that the jury was allowed to evaluate that evidence and weigh it as it saw fit. The fact that we do not view the evidence as being as persuasive as the jury did does not affect the outcome here. Mindful of the well-established rule that "[a] new trial should be granted only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand,'" we are unable to say that a new trial should be granted. *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc)).

We note that the facts alleged here barely fulfill the minimum requirements of a conditions of confinement claim, and caution that situations of even slightly lesser magnitude would likely be an abuse of discretion as a result of improper application of

10

law to fact. *See Montgomery County v. Microvote Corp.*, 320 F.3d 440, 445 (3d Cir. 2003) ("An abuse of discretion occurs when "the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." (quoting *Reform Party of Allegheny County v. Allegheny County Dep't. of Elections,* 174 F.3d 305, 311 (3d Cir. 1999))); *see also Rhodes*, 452 U.S. at 347 (noting that "cruel and unusual" conditions are adjudged under contemporary standards of decency); *Bell v. Wolfish*, 441 U.S. 520, 537 (1979) ("Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however. ... [T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'").

## II.

Denial of remittitur is reviewed for an abuse of discretion. *2660 Woodley Road Joint Venture v. ITT Sheraton Corp.*, 369 F.3d 732, 745 (3d Cir. 2004); *Brennan v. Norton*, 350 F.3d 399, 431 n.25 (3d Cir. 2003). It is well-established in the Third Circuit that to disturb a jury verdict, "the damages assessed by the jury must be so unreasonable as to offend the conscience of the Court." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989) (quoting *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979)); *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 771 (3d Cir. 1987). Although the prison defendants are correct that both Keller and Martin made essentially full recoveries, this fact alone does not require the reduction of the jury's award. *See Gagliardo v.*

*Connaught Labs., Inc.*, 311 F.3d 565, 573 (3d Cir. 2002) ("To recover emotional damages a plaintiff must show 'a reasonable probability rather than a mere possibility that damages due to emotional distress were in fact incurred....'" (quoting *Spence v. Bd. of Educ.*, 806 F.2d 1198, 1201 (3d Cir. 1986)). There was no abuse of discretion by the trial court in failing to order remittitur.

III.

Review of an evidentiary ruling denying the admission of evidence of prior convictions for crimes of dishonesty is plenary because the district courts have no discretion to exclude evidence of a prior conviction under Federal Rule of Evidence 609(a)(2). *Walker v. Horn*, 385 F.3d 321, 333 n.26 (3d Cir. 2004) ("The construction of Rule 609 is an issue of law over which we have plenary review."); *United States v. Hans*, 738 F.2d 88, 94 (3d Cir. 1984). Keller and Martin renew their waiver argument with respect to the prison defendants' claim that impeachment evidence as to Keller should have been admitted. Keller and Martin argue that the District Court's ruling on the pretrial motion in limine excluding the criminal records "as such," was only tentative and did not preclude the prison defendants from later making an offer of proof of those records during trial. Consequently, Keller and Martin claim that because prison defendants failed to make a later offer, they waived any objection. The critical question is "whether the district court's *in limine* ruling to exclude the [evidence] was 'a definitive ... ruling with no suggestion that it would reconsider the matter at trial.'" *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 519 (3d Cir. 1997) (quoting *American Home*

12

*Assur. Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 325 (3d Cir. 1985)).

In ruling on the motion in limine, the following colloquy occurred between the District Court and defense counsel:

| | |
|---|---|
| Ms. Sperling: | The criminal records of Mr. Keller and Mr. Martin – |
| The Court: | The records don't come in, as such. But certainly the fact – I'll put it this way. Unless somebody can convince me that the criminal records bear on the issue of damages, they will be kept out. |
| Ms. Sperling: | Thank you, Your Honor. |
| The Court: | I'm advised that we now have a jury panel, so we might as well not waste anymore [sic] time here. Let's get the jury. |
| Ms. Sperling: | Thank you, Your Honor. |
| Mr. Straw: | Thank you, Your Honor. |
| The Court: | And I will rule on evidentiary matters as they arise in the course of trial. |

As the plaintiffs suggest, this was not a definitive ruling on the motion in limine, and thus it was incumbent upon the prison defendants to attempt to make an offer of the records at trial. *See Walden*, 126 F.3d at 517 ("Although decisions to exclude evidence are generally reviewed for abuse of discretion, when a party fails to preserve the right to appeal an exclusion, we review for plain error. Under Fed. R. Evid. 103(a), a party may not appeal a ruling excluding evidence unless the party asserting error made an offer of proof at trial."). The prison defendants' argument that the District Court gave them "no suggestion that it would reconsider [the evidentiary] ruling at trial," is not credible in light of the Court's statement that "I will rule on evidentiary matters as they arise," and therefore the prison defendants should have raised the issue again during trial. *Id.* at 519. This failure to attempt to introduce the impeachment evidence at trial results in a waiver

13

of the issue on appeal.

IV.

The judgment of the District Court will be affirmed. Although a different fact finder may have reached a different conclusion on this record, the verdict reached by this jury was not against the weight of the evidence. Similarly, the amount of damages awarded by the jury is not so unreasonable as to require remittitur. As to the evidentiary ruling, the prison defendants waived this argument by not attempting to put the impeachment evidence into the record at trial.