**Stanley Barham CLARK, Petitioner-Appellee,**

v.

**Jimmy C. ROSE, Warden, Respondent-Appellant.**

No. 84–5744.

United States Court of Appeals, Sixth Circuit.

Argued March 23, 1987.

Decided June 24, 1987.

---

W.J. Michael Cody, Atty. Gen., Nashville, Tenn., Kymberly Lynn Anne Hattaway (argued), for respondent-appellant.

Scott Daniel (argued), Daniel, Burton & Thomas, Murfreesboro, Tenn., for petitioner-appellee.

Before KENNEDY, WELLFORD and NORRIS, Circuit Judges.

WELLFORD, Circuit Judge.

Following our grant of habeas corpus relief to petitioner Stanley Barham Clark in this case, the Supreme Court granted certiorari on one of two issues raised by Jimmy C. Rose, Warden, respondent (hereafter referred to as the State). Based on prior precedent in our court, we had held that there was a constitutional violation of the kind described in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), "inherent in the instructions given by the Tennessee trial court, and that in this murder case involving a defense of lack of *mens rea,* the error was not harmless beyond a reasonable doubt, despite the substantial evidence of petitioner's guilt...." *Clark v. Rose,* No. 84–5744, slip op. at 6 (6th Cir. April 1, 1985) [762 F.2d 1006 (table)].

The single issue presented and accepted by the Supreme Court was "whether the harmless error standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), applies to jury instructions that violate the principles of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450; 61 L.Ed.2d 39 (1979), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)." *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 3103, 92 L.Ed.2d 460 (1986) (footnote omitted). We had indicated in our 1985 unpublished prior decision:

> Were we writing on a clean slate, we would direct our inquiry to that suggested by Justice Powell (dissenting) in *Connecticut v. Johnson,* 460 U.S. [73] at 97 n. 5 [103 S.Ct. 969 at 983 n. 5, 74 L.Ed.2d 823]:
>
>> the inquiry is whether the evidence is so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption.
>
> If that were the question in this case ... we might be able to respond in the affirmative.

*Clark v. Rose,* slip op. at 6–7.

"[O]n the question whether ordinary harmless-error analysis was appropriate in

cases of *Sandstrom* error", the Supreme Court noted that "[t]he *Johnson* plurality noted that state and federal courts were in conflict." *Rose v. Clark*, 106 S.Ct. at 3103 n. 1.

Prior to the Supreme Court's vacation and remand for further proceedings consistent with the opinion in *Rose v. Clark*, *supra*, we had cited in our prior decision the case of *Engle v. Koehler*, 707 F.2d 241 (6th Cir.1983), *aff'd by an equally divided Court*, 466 U.S. 1, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984). *Engle v. Koehler* observed that in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), the [Supreme] Court was divided on the question whether a *Sandstrom* instruction could be deemed harmless. *Engle*, 707 F.2d at 246. *Engle v. Koehler* was affirmed by a divided Supreme Court; the decision was, upon analysis, that under the circumstances of that case, the *Sandstrom* error instruction was not harmless because the requisite *mens rea* was an issue.

In *Merlo v. Bolden*, 801 F.2d 252 (6th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1358, 94 L.Ed.2d 527 (1987), following the *Rose v. Clark* decision by the Supreme Court, our court recognized that *Engle* was "expressly rejected," and thus that *Engle*, on which we had relied, "no longer represent[ed] the correct statement of the law." 801 F.2d at 256, 257.[1] *See also McGhar v. Koehler*, No. 85–1177 (6th Cir. Nov. 8, 1985) (remanded by the Supreme Court in light of *Rose v. Clark*). On remand, our court held in *McGhar* "after examination of the record in its entirety ... that the jury would have found it unnecessary to rely on the presumption," which was a part of the instruction in controversy. *See McGhar v. Koehler*, No. 85–1177 slip op. at 4 (6th Cir. Dec. 1, 1986) [811 F.2d 606 (table)].

As we have noted, the proof in this case demonstrated substantial evidence of petitioner's guilt. Each court that has examined the record in this case has been aware of the substantiality of the evidence of guilt in the sense that Clark had been at the scene and had shot both Joy Faulk and Charles Browning. The Tennessee Court of Appeals had viewed the jury instruction in question as not impermissibly shifting the burden of proof to Clark. We disagreed, viewing the instruction as presenting a likelihood that the jury might be misled. In our prior opinion, we also indicated that we might be able to view the evidence as "so dispositive of intent" that we might be able to say beyond a reasonable doubt that the jury "would have found it unnecessary to rely on the presumption." (Slip op. at 7).

Counsel for Clark at the trial argued that Sam Faulk, the victim's ex-husband, may have killed her because of a conflict about custody of the two children who were also in the truck at the time of the killings. He argued that a missing shell, inadvertently misplaced by the authorities, may have indicated another weapon and another shot fired at the scene. We are convinced beyond a reasonable doubt, however, that the jury's verdict was unquestionably a settled decision, unaffected by the contested instruction in any fashion, that Clark fired the fatal shots. Sam Faulk was, moreover, shown to be elsewhere at the fateful time.

Next, Clark argued that he was incapable of the requisite criminal intent, and he presented a psychiatric opinion that he was suffering from shock amnesia that prevented his recollecting the details of the shootings. Other evidence, however, indicated that Clark purposefully followed the two victims with a gun, fully loaded, and that on the night in question he blocked the truck driven by Browning in a driveway, approached it, and shot at point-blank range the two victims. There was also evidence that Clark had frequently threatened to kill Mrs. Faulk if he found her with another man.

In addition to testimony of two psychiatrists that Clark was legally incapable of

---

1. *Merlo* also acknowledged that *Rose v. Clark*, — U.S. —, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), had also modified our decisions in *Conway v. Anderson*, 698 F.2d 282 (6th Cir.), *cert.* denied, 462 U.S. 1121, 103 S.Ct. 3092, 77 L.Ed.2d 1352 (1983), and *Martin v. Foltz*, 773 F.2d 711 (6th Cir.1985). *See* 801 F.2d at 257.

the requisite intent to do murder, there was evidence that Clark had been drinking heavily that day before the shootings. The prosecution apparently brought out that the amount of alcohol Clark claimed to have consumed was an impossible quantity, thus attempting to discredit Clark. It was clear that Clark could drive his truck without difficulty and followed the victims for some time before "cornering" them and shooting them. Afterward, when the police attempted to stop him, Clark attempted to evade them at a high rate of speed.

The questioned instruction bore upon the premise that homicides were presumed to be maliciously committed, but this was also expressly indicated to be rebuttable by any evidence, direct or circumstantial, even in the proof offered by the State. Proof offered by defendant at trial concerned his incapacity to form the requisite intent or to act deliberately as the State was required to prove.[2] Tennessee law provides that voluntary intoxication of a defendant is no justification for murder but "its existence may negate a finding of specific intent." *State v. Bullington*, 532 S.W.2d 556, 560 (Tenn.1976). The instruction included the following language:

> "[M]alice cannot be inferred from mere deadly intent.... [T]he question of whether the alleged killing was done with malice is for you to determine from the entire case, and you should look to all the facts and circumstances developed by the evidence to determine whether the State has proven beyond a reasonable doubt the existence of malice. If you have a reasonable doubt as to whether the alleged killing was done with malice, then the Defendant cannot be guilty of murder....
>
> ....

... If the evidence adduced either by the Defendant or the State raises a reasonable doubt as to the Defendant's sanity, then the burden is upon the state to establish the Defendant's sanity beyond a reasonable doubt." [3]

> ....

... the burden of proof never shifts and is always upon the State to prove beyond a reasonable doubt that the deaths of the deceased were brought about by the unlawful acts of the Defendant.

■ The instruction violated *Sandstrom* in using the phrase, "the killing is presumed to be malicious." Viewing the instruction as a whole, however, it is clear that the trial judge emphasized that the jury was to look at all of the circumstances, including the alleged drunken condition of defendant Clark, and specifically including his claims of alibi, amnesia, and insanity, and that the State had the burden of proving his guilty actions, including the requisite malicious intent, beyond a reasonable doubt. We note that the Supreme Court did not itself consider and decide, "whether, taken in context, the instructions were permissible under our decisions in *Sandstrom* and in *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)." *Rose v. Clark*, 106 S.Ct. at 3105 n. 5. For purposes of its harmless error analysis, the Court merely assumed that we were correct in holding them violative. *Id.*

■ As the Supreme Court pointed out, in this case defendant was vigorously represented throughout the proceedings including the subsequent appeals and post-conviction challenges. "He was tried by a fairly selected, impartial jury, supervised by an impartial judge." 106 S.Ct. at 3107. "[T]here is no inherent difficulty in evaluat-

---

2. Under Tennessee law, as the court instructed, to prove first degree murder the State was required to prove beyond a reasonable doubt that defendant acted deliberately, maliciously, and with premeditation. Second degree murder required proof under the same standard that defendant intended "with malice aforethought" to do bodily harm to the victim. *See State v. Bullington*, 532 S.W.2d 556 (Tenn.1976).

3. The experienced Tennessee trial judge also instructed that "a person is not responsible for criminal conduct if, at the time ... he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." He also instructed the jury on the "drunkenness" claim of the defendant, particularly as it related to the required showing of "deliberation and premeditation" in the case of first degree murder, and as it related to the claim of insanity.

ing whether the [instruction] error prejudiced respondent [Clark] in this case." 106 S.Ct. at 3107 n. 7. The question is whether the guilty verdicts reached in light of the *Sandstrom* instruction error were correct beyond a reasonable doubt. No equivalent directed verdict was granted here to the prosecution. The predicate facts strongly indicate that Clark acted with the required intent following his repeated threats of harm and death to the victim Faulk and her companion.

After careful analysis of the entire record, although not without considerable difficulty, we find that the phrase in the instruction, though error, did not preclude the jury's finding that every essential element of the offenses in question were established by the proof, giving it a favorable and reasonable construction in respect to the State's contentions. In essence, the instruction, under all the circumstances, amounted to little more than a direction that malice could be inferred from the defendant's conduct, if the jury were persuaded beyond a reasonable doubt that Clark in fact was the criminal actor. We do not find here a "fundamental miscarriage of justice." *United States v. Frady,* 456 U.S. 152, 172, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982).

At the oral argument after remand, able counsel for Clark, in effect conceded that Tennessee has a harmless error rule. See *State v. Martin,* 702 S.W.2d 560, 565 (Tenn.1985), wherein the court in a death penalty murder case, after finding a *Sandstrom* violation in the trial court's instruction (one considerably more egregious than the one involved in the instant case), was not able to say "that the error in this case was harmless beyond a reasonable doubt." We conclude that Tennessee does recognize the harmless error rule embodied in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and we are persuaded that the error involved here was harmless.

In summary, then, we can say on the basis of the whole record, that beyond a reasonable doubt the jury would have found it unnecessary to rely on the presumption mentioned in the trial court's instruction. Accordingly, we REVERSE the decision of the district court and deny Clark's petition for habeas corpus relief.