**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

Timothy Wayne **MORROW** (89–5418/5708), George **Mooneyham** (89–5710), **Defendants–Appellants.**

**Nos. 89–5418, 89–5708 and 89–5710.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 30, 1990.

Decided Jan. 10, 1991.

James R. Dedrick (argued), Asst. U.S. Atty., Office of the U.S. Atty., Knoxville, Tenn., for plaintiff-appellee.

Edward C. Miller (argued), and A. Benjamin Strand, Strand & Goddard, Dandridge, Tenn., for Morrow.

A. Philip Lomonaco, Knoxville, Tenn., for Mooneyham.

Before JONES and KRUPANSKY, Circuit Judges, and HILLMAN, Chief District Judge.*

HILLMAN, Chief District Judge.

Defendants Timothy Wayne Morrow and George Mooneyham appeal their jury convictions on three drug related offenses. On Count I, the jury found that defendants aided and abetted each other in the unlawful manufacturing of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. Defendants were convicted on Count II under 21 U.S.C. § 846 of conspiring to manufacture marijuana. Count III charged defendant Mooneyham, aided and abetted by defendant Morrow, with carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). For the reasons set forth, we affirm the jury verdict on Counts I and II but vacate the judgments as to Count III.

## I.

Defendants were arrested by Special Agents of the United States Forest Service as they tended to plants in a large marijuana patch growing in the Cherokee National Forest. The Forest Service had been surveying the two fields of marijuana since discovering them in June, 1988. On July 31, 1988 the agents observed defendants approaching the patches on all-terrain ve-

hicles, wearing camouflage clothing and ski masks.

As defendants approached the field, the agents noticed that one of them, later identified as defendant Mooneyham, was wearing a holster with a handgun. Upon entering the patch, defendants began pacing the rows, cutting marijuana plants. After approximately ten minutes the agents confronted defendants. Morrow was immediately apprehended, but Mooneyham ran into the woods and was not captured for about thirty minutes. When Mooneyham was arrested, the holster was empty. The agents later found the gun, a .22 caliber magnum revolver, at the entrance to the marijuana patch. It was loaded and in working order.

After being advised of his Constitutional rights, Morrow explained to the agents that he was removing the male plants from the patch to facilitate the production of tetrahydrocannabinol in the female plants. Morrow proceeded to show one of the agents the difference between a male and a female plant. Further, Morrow stated that the plants would not be harvested until buds formed, which would occur in about another month when the nights cooled. Defendants were tried before a jury on October 17–18, 1988. The jury returned guilty verdicts as to both defendants on all three counts. At the sentencing hearing, Morrow was ordered to serve sixty-three (63) months imprisonment on Counts I and II, to be served concurrently. Mooneyham was sentenced to thirty-seven (37) months imprisonment on Counts I and II, also to be served concurrently. On Count III (the firearm offense), both defendants received the mandatory five year sentence set forth in 18 U.S.C. § 924(c) to be served consecutively to the underlying sentences. In addition, the trial court ordered that each defendant serve a five year term of supervised release following his incarceration.

## II.

Defendants claim several general errors on appeal, and also challenge their convic-

* The Honorable Douglas W. Hillman, Chief Judge, United States District Court for the West-ern District of Michigan, sitting by designation.

tions on Count III on sufficiency of the evidence and adequacy of the instruction grounds. Although we find only the challenges on Count III to have merit, we will address each issue raised.

■ **A.** *Bruton* **issue:** Mooneyham first contends that the trial court committed reversible error by admitting codefendant Morrow's statements made to the arresting agents immediately after his arrest. Mooneyham argues that admission of Morrow's confession incriminated him and violated his Constitutional right to confrontation.

The Supreme Court recognized the potential confrontation problem in joint trials where a nontestifying codefendant's confession is admitted and prejudices a defendant against whom the confession is not admissible in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). To avoid any *Bruton* problems, the trial court ordered all plural pronouns which might be construed to refer to Mooneyham redacted from Morrow's statement. *See Richardson v. Marsh,* 481 U.S. 200, 207–09, 107 S.Ct. 1702, 1707–08, 95 L.Ed.2d 176 (1987).

At trial, one of the agents testified that Morrow had told him how "they" had learned about growing marijuana. Following defense's objection, the officer corrected his testimony, using only singular pronouns. This slip did not violate Mooneyham's rights under *Bruton.* No confrontation problem arises where the codefendant testifies and is available for cross-examination. *Nelson v. O'Neil,* 402 U.S. 622, 627, 91 S.Ct. 1723, 1726, 29 L.Ed.2d 222 (1971); *Hodges v. Rose,* 570 F.2d 643, 646 (6th Cir.), *cert. denied,* 436 U.S. 909, 98 S.Ct. 2244, 56 L.Ed.2d 408 (1978). Here both defendants opted to take the stand, and Mooneyham was afforded a full opportunity to cross-examine Morrow regarding those statements. Consequently, Mooneyham's Sixth Amendment rights were protected.

■ **B.** **Judicial bias:** The next issue appealed involves allegations of judicial misconduct and bias. Both defendants assert that they were denied a fair trial due to the judge's bias. In support they refer to the following comments by the court in the absence of the jury:

> Talk about having his hand in the cookie jar when they don't want you to steal cookies ... About the strongest case I ever heard.

J.App. at 125–126.

A court's bias or prejudice may, in some circumstances, violate a defendant's right to due process. *Johnson v. Mississippi,* 403 U.S. 212, 216, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423 (1971). The statements cited by defendants here, however, do not support the conclusion that the trial judge was prejudicial. Since no contemporaneous objection was made at trial, we must apply the plain error standard. *United States v. Slone,* 833 F.2d 595, 598 (6th Cir.1987).

A judge's comments must be viewed in the context in which they were made and unless they "adversely affect the overall fairness of the trial" they will not be deemed prejudicial. *Harris v. Lockhart,* 743 F.2d 619, 620 (8th Cir.1984). The statements here were made following defendants' motion for Judgment of Acquittal. In ruling upon such a motion, the trial judge is called upon to comment on the sufficiency of the government's proofs to sustain a conviction. Fed.R.Crim.P. 29; *United States v. Davis,* 785 F.2d 610, 617 (8th Cir.1986). Furthermore, the comments were made outside the presence of the jury, thereby substantially diminishing the likelihood of actual prejudice. *See United States v. Block,* 755 F.2d 770, 776 (11th Cir.1985). These isolated statements did not render the trial unfair.

**C.** **Prior Convictions:** Morrow has been previously convicted of robbery and possession of counterfeit fifty dollar bills. The court allowed the government to elicit this on cross examination of Morrow for impeachment purposes. Morrow argues that absent an express finding by the court that the probative value of this evidence was outweighed by its prejudicial effect, this evidence was improperly admitted. This claim is without merit.

■ Evidence of prior convictions involving dishonesty or false statements are admissible to attack the witness's credibility.

Fed.R.Evid. 609(a)(2). Under this rule, the district court has no discretion to exclude evidence of prior convictions. *McHenry v. Chadwick,* 896 F.2d 184, 189 (6th Cir.1990). *See also United States v. Hans,* 738 F.2d 88, 94 (3rd Cir.1984); *United States v. Kuecker,* 740 F.2d 496, 502 (7th Cir.1984). Consequently, a witness convicted of a crime involving dishonesty or false statement may be impeached through the conviction regardless of any potential prejudice.

Counterfeiting is an offense involving "dishonesty or false statements." The Conference Committee notes explain that "crimes such as perjury or subordination of perjury, false statement, criminal fraud, embezzlement, or false pretenses, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully" are included under Rule 609(a)(2). Conf.Rep. No. 1597, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 7051, 7098, 7103. We agree with other courts which have found counterfeiting to fit within this definition. *See United States v. Noble,* 754 F.2d 1324 (7th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985); *Kaye v. United States,* 177 F. 147 (7th Cir.1910). It was therefore not necessary for the judge to balance the probative value against the prejudicial effect before admitting evidence of this conviction.

■ Morrow correctly notes that juvenile adjudications are not admissible for impeachment purposes. Fed.R.Evid. 609(d). However, the record shows that, although prosecuted under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5024 (*Repealed,* Pub.L. 98–473, Title II, § 218(a)(8), Oct. 12, 1984, 98 Stat. 2027), Morrow was not a juvenile at the time of his arrest or conviction for counterfeiting. Morrow was born on August 30, 1963; he was arrested and convicted of both crimes in 1982. J.App. at 189; Rpt. of Proc. be-

fore Magistrate. Rule 609(d) therefore does not bar the admission of this evidence.

■ Finally, evidence of Morrow's prior conviction for robbery was properly admitted under Rule 609(a)(1). While the court must determine that the probative value outweighs the prejudicial effect under this subdivision of the rule, Morrow incorrectly assumes that the court must expressly set forth its findings on the record. That is not the law of this circuit. *United States v. Thompson,* 612 F.2d 233, 234 (6th Cir.1979). A trial court's decision to admit evidence of a prior conviction for impeachment purposes under Rule 609(a) will be upset only upon a showing of abuse of discretion. *United States v. Ortiz,* 553 F.2d 782, 784 (2nd Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977). The trial court allowed only limited cross examination on the prior convictions. J.App. at 178–179. The trial court's decision to admit this evidence did not constitute an abuse of discretion.

■ **D. Physical Evidence Issue:** Various tools and paraphernalia commonly associated with cultivating marijuana were recovered from the patch and admitted into evidence. Morrow objects to their admission on the grounds that the government failed to establish any connection between him and the equipment. In light of this, Morrow contends that the physical evidence should have been excluded as being more prejudicial than probative.

Morrow's argument pertains to fourteen different exhibits. Each was properly identified by the agents prior to being offered and admitted into evidence. J.App. at 76–77, 91, 108–117. At no time did Morrow object to the admission of these articles. Failure to object waives his right to raise this on appeal. *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *United States v. Cardinal,* 782 F.2d 34 (6th Cir.), *cert. denied,* 476 U.S. 1161, 106 S.Ct. 2282, 90 L.Ed.2d 724 (1986).[1]

■ **E. Prosecutorial Misconduct:** Morrow next argues that he was denied a

---

**1.** Though Morrow blames the failure to object upon the incompetency of his counsel, since we also find this argument to be without merit, the waiver for failure to object is valid.

fair trial because the prosecutor improperly made statements in closing argument to deliberately arouse the passions and prejudices of jurors. The contested argument reads:

It's against federal law to carry a weapon in the commission of, or to facilitate violation of federal narcotics statute. And I think you see the reason why. Because it exposes the lives of agents and other people, this is national forest land, you and I, our children have rights to walk on forest land, and that's reason we have laws we do, to protect citizens, individuals, if they are going to break narcotics laws, but other thing is, they're not going to carry weapons.

J.App. at 192.

Morrow specifically questions the reference to the jurors and their children, placing them as potential victims. Where a prosecutor's conduct rises to the level of tainting the whole trial, due process is violated. *Berger v. United States,* 295 U.S. 78, 88–89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *Guidroz v. Lynaugh,* 852 F.2d 832, 836–37 (5th Cir.1988). However, on appeal the court should reverse a conviction based upon prosecutorial misconduct only if the resulting prejudice permeates the entire trial. *United States v. Terry,* 729 F.2d 1063, 1070 (6th Cir.1984). Furthermore, since Morrow did not object at trial, we will only disturb the conviction upon a finding of plain error. *United States v. Young,* 470 U.S. 1, 6–7, 105 S.Ct. 1038, 1041–42, 84 L.Ed.2d 1 (1985).

This isolated statement, made in closing argument, although clearly objectionable does not rise to the level of denying Morrow due process rights, nor does it constitute plain error. The court properly instructed the jury to consider only the evidence, and reminded them that closing argument is not part of the evidence. Therefore, we conclude that Morrow's right to a fair trial was not prejudiced.

■ **F. Ineffective Assistance of Counsel:** Morrow lists five instances where he alleges counsel's performance was inadequate: (1) failure to move to exclude evidence of prior convictions; (2) failure to object to the admission of physical evidence; (3) failure to call a particular witness; (4) failure to impeach a government witness with a prior statement; and (5) failure to move for a new trial or acquittal under Fed.R.Crim.P. 33.

The Supreme Court set forth a two-pronged test for sufficiency of counsel arguments in *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). To prevail, Morrow must show that counsel's performance "fell below an objective standard of reasonableness" and that his defense was "prejudiced" as a result. Absent grossly deficient conduct, tactical decisions by counsel will not be second guessed by the reviewing court. *Id.* Morrow has not presented evidence sufficient to overcome this strong presumption of adequacy. The record shows that counsel filed several pretrial motions and actively participated in the trial.

Arguably, counsel's failure to move for a new trial or a judgment of acquittal was not a mere tactical error. However, Morrow's claim nonetheless fails in the second prong of the *Strickland* test. A conviction will not be overturned unless the defendant can show that but for counsel's deficiency he would likely not have been convicted. Morrow has presented no evidence that the trial court would have granted this motion.

■ **G. Sentence Enhancement:** Count I of the indictment charges Morrow with aiding and abetting in the unlawful manufacture of "one hundred (100) or more" marijuana plants. Morrow's sentence under the guidelines was determined based upon 883 plants actually recovered from the two fields. Morrow submits that it was improper sentence enhancement to calculate the guideline base level offense on anything but the 100 plants charged in the indictment.

Morrow relies on *United States v. Alvarez,* 735 F.2d 461 (11th Cir.1984), a pre-guidelines case, to support his claim. The court there held it improper to enhance a sentence based upon quantity where the indictment failed to allege quantity. *Id.* at

468. Morrow's reliance on *Alvarez* is misplaced. The quantity "one hundred (100) or more plants" was alleged in the indictment. The Guidelines expressly provide that "quantities of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." Federal Sentencing Guidelines § 1B1.3, n. 5. *See also Guidelines Manual*, § 2D1.1 (guideline for drug trafficking offenses); *United States v. Fernandez*, 877 F.2d 1138, 1142 (2nd Cir.1989); *United States v. Perez*, 871 F.2d 45, 48 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). The district court correctly used the full quantity of drugs involved in calculating Morrow's sentence.

**H. Section 924(c) jury instruction:** Mooneyham challenges his conviction on Count Three on the grounds that the court did not adequately instruct the jury as to the elements of the crime. Specifically, Mooneyham contends that the court failed to advise the jury that the gun had to be an integral part of the drug trafficking offense.

Mooneyham failed to challenge the instruction at the court below. However, this does not preclude him from raising the issue on appeal. We may still review the instruction applying a plain error standard. *Young*, 470 U.S. at 15–16, 105 S.Ct. at 1046–47. Plain error is "an egregious error, one that directly leads to a miscarriage of justice." *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir.1988). We find that plain error occurred here, and therefore reverse Mooneyham's conviction on Count III.

Prior to 1984, section 924(c) made it an offense to "carr[y] a firearm unlawfully during the commission of a felony." When the statute was rewritten as part of the Comprehensive Crime Control Act of 1984, the "unlawfully" requirement was eliminated and the phrase "in relation to" was added. The statute now provides:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C. § 924(c)(1).

The legislative history reveals that Congress aimed to ensure that the statute not punish people in instances where the presence of the firearm was merely coincidental and unrelated to the violent or the drug trafficking offense. S.Rep. No. 225, 98th Cong., 1st Sess. 312–14 (1983), *reprinted in* 1984 U.S.Code Cong.Admin. News 3182, 3490–92 (hereinafter "Senate Report"); *United States v. Stewart*, 779 F.2d 538, 539 (9th Cir.1985), *cert. denied*, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987). As we recently noted, "The Senate Judiciary Committee's report indicates that Congress added the phrase 'in relation to' to keep the statute focused on those persons whose firearms played a role in their criminal conduct." *United States v. Brown*, 915 F.2d 219, 224 (6th Cir.1990) (citing the Senate Report at 314 n. 10), U.S.Code Cong. & Admin.News 1984, p. 3492.

This Circuit recently held that "the phrase 'in relation to' modifies the element of 'during'..." in section 924(c). *Brown*, 915 F.2d at 227. Although the "in relation to" language does not add a substantive element or make section 924(c)(1) a specific intent offense, it alters the nature of the proof that is required to secure a conviction. *Id.* at 226–27. A conviction under section 924(c)(1) will withstand appellate review

if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor. The defendant's sole purpose in the carrying of the weapon need not have been facilitation of the drug trafficking crime.

*Id.* at 226. (*quoting United States v. Payero*, 888 F.2d 928, 929 (1st Cir.1989)).

In sum, this Circuit recognizes that 924(c) as amended requires proof of a relationship between the weapon and the un-

derlying offense that shows the weapon at least facilitated the offense. *Brown*, 915 F.2d at 224, 226–27. Mere possession of a weapon during the course of criminal conduct is not enough. *Id.* at 224. "Rather, 'under the current version of § 924(c), the government is shouldered with the burden of establishing some relationship between the firearm [the defendant] possessed and the predicate drug trafficking offense.'" *Id.* (quoting *United States v. Wilson*, 884 F.2d 174, 177 (5th Cir.1989)).

By simply mirroring the language of the section 924(c)(1) itself, the instruction given by the district court in this case failed to explain that "in relation to" modifies "during" and requires proof of a relationship between the firearm and drug offense:

> Finally, you must consider Count III of the indictment which charges on or about July 31st, 1988, in Cocke County, within the Eastern District of Tennessee, the defendant, George Mooneyham, aided and abetted by the defendant, Timothy Wayne Morrow, did knowingly and intentionally use and carry a firearm; that is, a .22 caliber revolver during and in relation to a drug trafficking offense. This charge is a violation of a federal law found in Title 18, United States Code, 924(c)(1) and (2), which makes it illegal to use or carry a firearm in relation to any drug trafficking crime ... In order for the Government to carry its burden of proof that Defendant Mooneyham is guilty of the crime charged in Count III, the Government must prove, beyond a reasonable doubt, that; one, George Mooneyham unlawfully manufactured marijuana plants, as charged in Count I of the indictment or conspired to manufacture marijuana, as charged in Count II ...; and secondly, that the Defendant Mooneyham knowingly and willfully carried a firearm during and in relation to this offense.

J.App. 196–97.

Although this instruction recites the essential elements necessary to convict under section 924(c), it is plainly inadequate. The trial judge's responsibility in charging the jury goes beyond merely reiterating the pertinent statute.

> We have consistently held that it is the duty of the trial judge 'to tell a jury what facts they must find before they can convict—that is, to instruct the jury as to the elements of the crime charged.' [citations omitted.] *Ordinarily, it will not suffice merely to read to the jury the statute defining the crime.* Even though the language of a statute may expressly contain all the elements of the offense, common English words often will have peculiar legal significance. (emphasis added.)

*United States v. Bryant*, 461 F.2d 912, 920 (6th Cir.1972).

At oral argument the government submitted that "in relation to" is not a term of art, and therefore required no elaboration. While the phrase does not create a separate substantive element, it nevertheless modifies the "during" element of 924(c)(1) and requires an explanation of the relational connection necessary to secure a conviction. We find that the district court erred by not instructing more specifically on the relational aspect of the "during and in relation to" element.

An example of what we consider an adequate instruction was recently upheld by the Fourth Circuit:

> [T]he Government must prove beyond a reasonable doubt that the firearm had some relation to or some connection to the underlying crime. A firearm can be used in relation to a felony involving the drug trafficking, if the person possessing it intended to use the gun as a contingency arose, for example, to protect himself or make an escape possible.

*United States v. Brockington*, 849 F.2d 872, 876 (4th Cir.1988). This instruction reflects the Congressional intent of the "in relation to" language by incorporating an example found in the legislative history. Senate Report at 314 n. 10, U.S.Code Cong. & Admin.News 1984, p. 3492. Unlike the one given in the case at bar, this instruction fully apprises the jury of the additional facts connecting the weapon to the crime that it must find to convict on this charge.

Other recent cases provide examples of 924(c)(1) jury instructions that avoided the defects apparent in the one provided by the district court in Mooneyham's case. *See United States v. Michaels*, 911 F.2d 131, 132–33 (8th Cir.1990) (upholding jury instruction requiring "the jury to find, at the very least, that the gun was available to the defendant, and that its availability facilitated the carrying out of the drug-trafficking crime."); *United States v. Henning*, 906 F.2d 1392, 1397–98 (10th Cir.1990) (upholding jury instruction stating "[if] a firearm plays any role in a drug trafficking crime or if it facilitates the crime in any way, it is being used within the meaning of" section 924(c)(1)); *Payero*, 888 F.2d at 929 (upholding jury instruction stating "[m]ere possession of a weapon is not enough.... Rather, the government must prove that the firearm facilitated the drug trafficking crime in some way."); *United States v. Poole*, 878 F.2d 1389, 1393 n. 3 (11th Cir.1989) (upholding jury instruction stating that "the firearm must have played a purpose or function in carrying out the drug trafficking offense.").

Our conclusion that the district court erred by not instructing more specifically on the relational element requires that we address the question of harmless error. *United States v. Dotson*, 895 F.2d 263, 264–65 (6th Cir.1990) (failure to clarify meaning of "facilitate the commission of" subject to harmless error analysis); *United States v. Kerley*, 838 F.2d 932, 938–39 (7th Cir.1988) (failure to instruct clearly on an element of the crime not always reversible error).

 It is the responsibility of this court to determine if the instructional error here constitutes harmless error. *Rose v. Clark*, 478 U.S. 570, 576–84, 106 S.Ct. 3101, 3105–09, 92 L.Ed.2d 460 (1986). We should affirm the conviction if we conclude that no rational, properly instructed jury could do other than convict. *Pope v. Illinois*, 481 U.S. 497, 502–03, 107 S.Ct. 1918, 1921–22, 95 L.Ed.2d 439 (1987) ("a conviction should be affirmed where a reviewing court can find that the record developed at trial established guilt beyond a reasonable doubt."); *Clark v. Rose*, 822 F.2d 596, 600 (6th Cir.1987) ("[t]he question is whether the guilty verdicts reached in light of the ... instruction error were correct beyond a reasonable doubt.") Applying this standard to the facts at hand we do not find the error to be harmless.

Mooneyham strenuously argued at trial that the only purpose for the gun was to shoot snakes. Mooneyham testified that he is very frightened of snakes. J.App. at 149. Mooneyham also testified that the incidence of snakes, including rattlesnakes, in the Cherokee National Forest is high. J.App. at 150. Further, the arresting agents testified that the holster bore the inscription "For Snakes Only" and that one of the defendants, at the time of his arrest, had stated that the pistol was "for snake purposes." J.App. at 94–96.

It is solely the function of the jury to weigh the evidence and judge the credibility of the witnesses. In light of the above testimony, it is by no means inconceivable that a rational jury could conclude that the pistol carried by Mooneyham was solely for the purpose of shooting snakes, and not at all related to the drug trafficking offenses. This conclusion, if arrived at by the jury, would require that Mooneyham be acquitted of the charges in Count III. Consequently, we cannot say, as a matter of law, that the instructional error was harmless. Mooneyham's conviction is reversed.

 **I. Sufficiency of the evidence:** Morrow argues that his conviction on all three counts is not supported by sufficient evidence. Mooneyham raises this argument as to Count III only. However, "[a]bsent a manifest miscarriage of justice" the court will not review a challenge based upon the sufficiency of the evidence where the defendant failed to renew his Motion for a Judgment of Acquittal at the close of proofs. *United States v. Faymore*, 736 F.2d 328, 334 (6th Cir.), *cert. denied*, 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984). We find no such injustice here, and therefore hold that Mooneyham waived this challenge.

The court must consider all of the evidence presented at trial in the light most

favorable to the prosecution in reviewing a challenge based upon the sufficiency of the evidence. *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979); *United States v. Ellzey*, 874 F.2d 324, 327–328 (6th Cir.1989); *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir.1984), *cert. denied sub nom. Freeman v. United States*, 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985). The court may not vacate a jury's verdict unless it finds that no rational jury. could have concluded guilt beyond a reasonable doubt. *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir.1986), *aff'd*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Applying this standard, we find that there was indeed sufficient evidence presented upon which to convict Morrow on Counts I and II. We conclude, however, that there was insufficient evidence presented to support the conviction on Count III.

It is not disputed that Morrow, wearing a ski mask over his face, was removing male marijuana plants from the patch with codefendant Mooneyham on July 31, 1988. Although Morrow presented evidence in his defense that the patch did not belong to him, and that he did not know about it prior to that date, a reasonable jury nevertheless could find guilt beyond a reasonable doubt on counts one and two. Issues of credibility are uniquely left to the jury. *United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir.1988); *United States v. Ayotte*, 741 F.2d 865, 867 (6th Cir.), *cert. denied sub nom. Labadie v. United States*, 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984). We conclude that sufficient evidence was introduced to prove the essential elements of Counts I and II.

Count III charges Morrow with aiding and abetting Mooneyham in carrying a firearm during and in relation to a drug trafficking offense in violation of section 924(c). To convict, the jury had to find: 1) that Morrow was guilty on either Count I or II; 2) that Mooneyham violated section 924(c); and 3) that Morrow somehow knowingly advised, counseled, encouraged, or assisted Mooneyham in carrying the gun in relation to the underlying crimes.

As discussed above, the first element is met because there was ample evidence upon which the jury could predicate its guilty verdict on Counts I and II, and the second element suffers from the same error that requires reversal of Mooneyham's section 924(c) conviction.

▆▆ The primary deficiency, however, lies in the absence of proof of the third element being Morrow's knowing encouragement or assistance in Mooneyham's alleged violation of section 924(c). In order to sustain a conviction for aiding and abetting, the government must prove, beyond a reasonable doubt, both association with and participation in the substantive crime. *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949); *United States v. Hughes*, 891 F.2d 597, 599 (6th Cir.1989). To meet the participation prong, the government must establish some affirmative act by Morrow designed to further the criminal venture. *Id.*

The government submits that the inference that Morrow knew Mooneyham possessed the gun and the gun's presence and possible use sufficiently supports the jury's conviction on count three. While this may suffice as to the association prong, the government failed to produce any evidence sustaining the participation prong—a necessary element of the crime. Absent a showing of some active participation or encouragement, or some affirmative act by Morrow designed to further the criminal venture, the aiding and abetting conviction cannot stand. *Id.* No such proof having been offered, we vacate Morrow's conviction on Count III.

### III.

For the foregoing reasons, the judgments of conviction against Morrow and Mooneyham are AFFIRMED with respect to Counts I and II. Morrow's conviction under Count III is VACATED, and Mooneyham's Count III conviction is REVERSED and REMANDED for further proceedings consistent with this opinion.

KRUPANSKY, Circuit Judge, concurring in part and dissenting in part.

The incongruous reasoning of the panel majority's justification for vacating George Mooneyham's (Mooneyham) and Timothy Wayne Morrow's (Morrow) jury convictions under 18 U.S.C. § 924(c)(1) [1] (section 924(c)) prompts me to dissent from that part of the majority opinion.

The panel majority's effort to impart some undefined, peculiar, intricate legal meaning or arcane significance to common and simple words of daily usage such as "carry", "use", "during" and "in relation to," as those words appear in the concise, unambiguous composition of section 924(c), is in conflict with every reported opinion addressing the requisite elements of a section 924(c) jury instruction.

The error of the majority's insistence on converting the statute's straightforward phrasing into a term of art is effectively summarized in *United States v. Ramos*, 861 F.2d 228 (9th Cir.1988). As in the instant case, in *Ramos* the defendant charged on appeal that the district court's failure to define the phrase "in relation to" under section 924(c) constituted reversible error. In rejecting Ramos' claim, the Ninth Circuit reasoned:

> Since this objection was not raised at trial, we review the jury instruction for plain error. *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985). Plain error is "highly prejudicial error affecting substantial rights[,] and is found only in exceptional circumstances." There must be a high probability that [the] error materially affected the verdict.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> We cannot conclude, as appellant urges, that "it is almost a certainty" that appellant would have been found not guilty if the "during and in relation to" instruction had been supplemented with some further explanation of the term "in relation to."

We conclude that the verdict was not "materially affected" by the omission of a definition for the language "in relation to." We conclude there was no plain error.

*United States v. Ramos*, 861 F.2d 228, 230–31 (9th Cir.1988) (some citations omitted).

Additional support for the proposition that the phrase "during and in relation to" requires no elaboration comes from *United States v. Malin*, 908 F.2d 163 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990), in which the Seventh Circuit stated that

> [s]ection 924(c)(1) makes it illegal to use or carry a firearm *"during and in relation to* any ... drug trafficking crime." 18 U.S.C. § 924(c)(1) (emphasis added). Congress included the phrase *in relation to* "to allay explicitly the concern that a person could be prosecuted under [the statute] for committing an entirely unrelated crime while in possession of a firearm." Malin argues that in instructing the jury the district court used the term *during* interchangeably with the phrase *in relation to*, thereby causing the jury to believe that it could convict Malin regardless of whether the government proved a relationship between the guns and the predicate offense. We see no merit in this argument. Although the charges instruction [sic?] and the original form of verdict employed the term *during* without the phrase *in relation to*, the instructions as a whole were clear and adequate. The district court specifically instructed the jury that to sustain a conviction the government must prove that Malin used or carried a firearm in relation to a drug trafficking offense. We also see no merit in Malin's argument that the district court erred in not explaining the meaning of the phrase *in relation to*. Malin argues that the court should have given an instruction similar to the one used in the *United States v. Brockington*, 849 F.2d 872 (4th Cir.1988).

---

**1.** The statute provides:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C. § 924(c)(1).

In *Brockington,* the United States Court of Appeals for the Fourth Circuit approved the following instruction:

> [T]he Government must prove beyond a reasonable doubt that the firearm had some relation to or some connection to the underlying crime. A firearm can be used in relation to a felony involving the drug trafficking, if the person possessing it intended to use the gun as a contingency arose, for example, to protect himself or make an escape possible.

*Id.* at 875. We have no quarrel with the *Brockington* decision. The issue in *Brockington,* however, was not whether a district court *must* give an explanatory instruction, but rather whether a district court *may* give one. Although, like the court in Brockington, we find no error in giving an explanatory instruction, we find it unnecessary. *The phrase in relation to speaks for itself; any further explanation is superfluous.* The district court therefore did not err in failing to give an explanatory instruction, especially since Malin did not request one.

> Taken as a whole, the instructions "treat the issues fairly and adequately." Consequently, we will not interfere with them on appeal.

*Malin,* 908 F.2d at 167–68 (some citations omitted) (last emphasis added).

In *United States v. Henning,* 906 F.2d 1392 (10th Cir.1990), the Tenth Circuit addressed the identical issue and reached an identical result in the following manner:

> The failure to instruct separately on the meaning of "in relation to" did not exclude an essential element under § 924(c)(1) from the jury's consideration. The legislative history of this section was analyzed in *United States v. Stewart....* In 1984, the phrase "during and in relation to" was substituted for "during" in § 924(c)(1). Circuit Judge (now Justice) Kennedy then reasoned that this substitution was not intended to create a new element of the crime but rather to clarify that a person could not be prosecuted under § 924(c) for an unrelated

crime committed while in possession of a firearm. As observed in *Stewart ....*:

> If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute.
>
> Henning took the stand at his trial and testified that his purpose in carrying the machine gun and other weapons was for target practice during an upcoming camping trip.... *The jury considered this and other evidence, and any reasonable inferences to be drawn therefrom, and not unreasonably, gave Yurcisin's testimony greater weight—not because of the trial judge's failure to define "in relation to" in the instructions packet.*
>
> \* \* \* \* \* \*
>
> We cannot conclude that the giving of an "in relation to" instruction would have had such an impact upon the jury that it would have reached a contrary result on the second and third counts. Considering the jury instructions as a whole, together with the evidence adduced at trial, *the district judge's failure to give an "in relation to" instruction was not plain error.*

*Henning,* 906 F.2d at 1397–98 (citations omitted) (emphasis added).

In *United States v. Michaels,* 911 F.2d 131 (8th Cir.1990), the Eighth Circuit joined these other circuits in expressing the commonly-held view that the phrase "during and in relation to" imports no more meaning than its plain language would suggest:

> Defendant claims that the instruction failed to mention that the firearm must be used during and in relation to the drug-trafficking offense. We disagree. Looking at the instructions as a whole, we see that the Court made clear that

the gun must be used during and in relation to the drug offense. Even if we confined our attention to the particular passage in the instructions highlighted by defendant, we could not agree with his contention. The instruction required the jury to find, at the very least, that the gun was available to the defendant, and that its availability facilitated the carrying out of the drug-trafficking crime. This language is fully supported by *United States v. Matra*, 841 F.2d 837 (8th Cir.1988), as the District Court pointed out. *Matra* holds that if a gun is available to the defendant, and if the gun was an integral part of the crime and increased the likelihood of its success, then it was used during and in relation to the crime. The instruction complained of here did no more than paraphrase *Matra*'s interpretation of the statute. This was not error.

*Michaels,* 911 F.2d at 132.

The panel majority mistakenly relies on *United States v. Brockington* for the proposition that an explanatory definition of the phrase "during and in relation to" is *required.* In *Brockington,* the appellant assigned error to the trial court for including explanatory language in its instruction illustrating the meaning of the "during and in relation to" element of the section 924(c) offense. Brockington's proposed instruction, which was rejected by the trial court, merely tracked the language of section 924(c) in defining the elements of the offense, without elaboration on the phrase "during and in relation to." Brockington argued, in essence, that the explanatory language tended to confuse the jury. The Fourth Circuit held that the trial court's unsolicited explication did not provide a basis for reversal. *Brockington,* 849 F.2d at 876. As demonstrated in the quoted language from *Malin, supra,* the Seventh Circuit has concluded that *Brockington* establishes that an annotated instruction is not necessary to convey the meaning of the phrase "in relation to," and that elaboration upon the phrase is not mandatory, but rather is permissive. *Malin,* 908 F.2d at 168. Cases cited by the majority are not to the contrary. *See, e.g., United States v.*

*Michaels,* 911 F.2d 131, 132 (8th Cir.1990) (*permitting* the use of a more elaborate instruction); *United States v. Henning,* 906 F.2d at 1397 (same); *United States v. Payero,* 888 F.2d 928, 929 (1st Cir.1989) (same); *United States v. Poole,* 878 F.2d 1389, 1393 (11th Cir.1989) (same).

Also contrary to the suggestion of the majority opinion, the recent Sixth Circuit case of *United States v. Brown,* 915 F.2d 219 (1990), has no bearing on the elements of a properly drafted section 924(c) instruction. The majority's reliance on *Brown* as authority to support its conclusion that the jury instruction in the instant case was deficient as it related to Count III of the indictment is incomprehensible in light of the fact that the adequacy of a section 924(c) jury instruction was not charged as an assignment of error in *Brown,* nor did the panel in *Brown* consider or decide the issue. Instead, *Brown* addressed a defendant's challenge to the government's asserted failure to prove specific intent to carry a firearm in relation to the drug offense. In sum, *Brown* makes no mention of, and has no impact on, the composition of a section 924(c) jury charge.

A reprise of the facts of this case serves to illustrate the clarity with which the "during and in relation to" element of the section 924(c) charge was submitted to the jury. Appellants' conviction under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, as charged in Counts I and II of the indictment, involved a lapse of a considerable period of time prior to the apprehension of the co-conspirators at the scene of the marijuana fields while in the act of cultivating their illicit crop. The events that occurred on Sunday, July 31, 1987 commenced in the early morning at Mooneyham's residence, when the defendants dressed in their camouflage apparel, and when Mooneyham, in the presence of Morrow, holstered the chrome-plated revolver, strapping it to his waist and thereafter carrying it in plain view as the men traveled to their well-concealed destination in a rugged and virtually inaccessible area of the Cherokee National Forest. The pair donned their ski masks before walking the last half mile on foot to

the marijuana site, where they immediately commenced to cultivate their crop, during which time, as the jury could have reasonably inferred from the developed facts, the firearm was likely carried for protection of the persons or of the property (the drugs). The jury also could reasonably have inferred that the revolver emboldened the participants in the commission of their illicit joint venture, either through the mere display of the weapon, as a useful means of intimidating and discouraging interference from others, or through its discharge, should the occasion have presented itself.

The "in relation to" language simply connotes a rational nexus between the firearm and the narcotics offense. As in *Ramos*, and as in every case from every other circuit that has addressed the issue, that simple connection is, in this case, amply supported by the evidence. The linkage permits the inference that appellant carried the firearm "in relation to" the manufacture of marijuana offense.

The implication that the jurors in this case were intellectually incapable of understanding the court's instruction, which clearly incorporated reference to the elements of a criminal charge under section 924(c), and proof of which rested upon the government beyond a reasonable doubt, demeans not only this particular jury panel, but jurors generally.

The verdict returned reflected no indicia of jury confusion. To the contrary, it disclosed a complete grasp of the developed facts, the instructed law and an inherent perceptivity that may have escaped the panel majority.

In sum, the jury, having viewed the demeanor of the defendants, their candor or lack thereof, the reasonableness and probability of their testimony, the discrepancies in their testimony, their intelligence, interest and bias, together with all circumstances surrounding their testimony, elected to assign little, if any, credibility or weight to the defendants' version of the

events and circumstances that resulted in their arrest and prosecution, and was equally unwilling to credit their testimony that the gun was carried to "kill snakes." [2]

Accordingly, I decline to join in that part of the majority opinion that assigns plain error to the district court's failure to elaborate upon the phrase "during and in relation to" as used in section 924(c).

Morrow's appeal does not challenge the jury charge, but rather questions the sufficiency of the evidence introduced to convict him of aiding and abetting the commission of the section 924(c) offense while engaging in the manufacture of marijuana in violation of 21 U.S.C. § 841. The factual and legal conclusions that are pertinent to Morrow's conviction of the section 924(c) criminal charge come within the parameters of universally accepted precedent. To convict Morrow of the section 924(c) offense charged in the indictment, the jury had to conclude that he was guilty on either Count I or II and that the carrying of the gun was related to one or both of these crimes.

The majority concedes that the first element was proved. Ample evidence existed upon which the jury could have predicated its guilty verdicts on Counts I and II.

The jury's conclusion that the firearm was carried "during and in relation to" the crimes of manufacturing or conspiring to manufacture marijuana is also sufficiently supported by the evidence. It is not necessary to prove that the gun was actually brandished or discharged in the commission of the underlying offense. *United States v. Robinson*, 857 F.2d 1006, 1010 (5th Cir. 1988); *United States v. Brockington*, 849 F.2d at 876. However, mere presence of a firearm during the commission of a crime, even if carried on the person, is not sufficient. The government must prove by direct or circumstantial evidence some relationship between the carrying of the gun and the *underlying offense*. S.Rep. No.

---

**2.** *Compare Henning*, 906 F.2d at 1398, in which the defendant took the stand and contended that his reasons for carrying the firearm were purely innocent, and in which the jury "not unreasonably" discredited the exculpatory testimony.

The nature of Morrow's and Mooneyham's testimony about the purpose of the gun—to repel snakes—was sufficient to convey to the jury the ordinary meaning of the term "during and in relation to" as used in section 924(c).

225, 98th Cong., 2d Sess, 314 n. 10 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10; *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988).

In the instant case the jury could have reasonably inferred and concluded (as it ultimately did conclude) that the revolver carried by Mooneyham was related to the crime of manufacturing marijuana under the "drug fortress" theory adopted by this Circuit in *United States v. Henry,* 878 F.2d 937 (6th Cir.1989). Although never drawn, "if it reasonably appears that the firearms ... are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." 878 F.2d at 944 (citing *United States v. Matra,* 841 F.2d 837, 843 (8th Cir.1988)). *See also United States v. Acosta–Cazares,* 878 F.2d 945, 951 (6th Cir.1989). The required nexus between the firearm and the *underlying offense* is also established if the firearm *"had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred ...."* *United ed States v. Stewart,* 779 F.2d at 540 (emphasis added).

It was also of no consequence that Morrow himself did not have possession of the gun. One who has either actual or constructive possession of a firearm may be considered to have "carried" it within the meaning of section 924(c). "[C]ourts have not held that 'carries' means actual possession...." *Acosta–Cazares,* 878 F.2d at 951. *See also United States v. Mason,* 658 F.2d 1263, 1270–71 (9th Cir.1981); *United States v. Barber,* 594 F.2d 1242, 1244 (9th Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979). Thus, although the pistol was in fact carried by Mooneyham, because it was readily accessible to facilitate the underlying crime, the "carries" element was met if Morrow knew of the presence of the gun. The arresting agents testified that the holster and gun worn by Mooneyham was plainly visible, even from a distance. From this the jury reasonably could have inferred that Morrow knew that his co-conspirator had a gun.

The superficiality of the panel majority's reversal of Morrow's conviction for violating 18 U.S.C. § 2 and section 924(c) is exposed in the following conclusory language, which denies the government of the benefit of the majority's reasoning (which, for a time, seems to be heading in a more logical direction), in support of what appears to be a factually and precedentially incongruous disposition:

> [T]he government failed to produce any evidence sustaining the participation prong—a necessary element of the crime. Absent a showing of some active participation or encouragement, or some affirmative act by Morrow to further the criminal venture, the aiding and abetting conviction cannot stand.... No such proof having been offered, we vacate Morrow's conviction on Count III.

The reversal of the jury's verdict ignores the weight of the evidence and the law that bears upon Morrow's affirmative acts in furthering the commission of the underlying criminal venture of manufacturing marijuana. It is difficult to comprehend how the panel majority could logically vacate Morrow's jury conviction on Count III of the indictment, charging him with aiding and abetting Mooneyham in manufacturing marijuana, while he knew Mooneyham was carrying a firearm. The probative evidence of Morrow's culpability was of more than sufficient weight to sustain his conviction as a *principal offender* under section 924(c), let alone as an aider and abettor.

It would appear, although it is not clear, that the majority is implying that because Count III charges Morrow with *aiding and abetting* Mooneyham in carrying a firearm during and in relation to a drug trafficking offense, a greater burden of proof is imposed upon the government to sustain his conviction than would be required if he had been charged as a principal offender. It is anomalous, at best, and absurd, at worst, to suggest that although Morrow committed all acts necessary to support his convic-

tion as a principal under section 924(c), his conduct was not that of an aider and an abettor. As is demonstrated by an established body of aiding and abetting jurisprudence, the panel majority misconceives the correlation between 18 U.S.C. § 2 and section 924(c).

In addressing the substantive law of aiding and abetting, as that offense is defined in 18 U.S.C. § 2, and as it interacts with 18 U.S.C. § 924(c)(1), it should be initially observed that section 924(c) is an "enhancing statute." Its legislative history discloses that the single "purpose of the statute was to impose more severe sanctions where firearms facilitated, or had the potential of facilitating, the commission of a felony." *United States v. Stewart*, 779 F.2d at 540. Research discloses no exceptions to or variations upon this interpretation. The precedential opinions that have relevance to the relationship between section 924(c) (the "firearm" enhancing statute) and 18 U.S.C. § 2 (the "aiding and abetting" statute) indicate that the "underlying" offense that Morrow is alleged to have "aided and abetted" is the *substantive* crime charged in the indictment in this case, *i.e.*, the unlawful manufacture of marijuana and conspiracy to manufacture marijuana, and not the collateral, enhancing offense of carrying a firearm during and in relation thereto.

In *Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), the Supreme Court defined the offense of "aiding and abetting" as "a rule of criminal responsibility for acts which one assists another in performing," and under which a defendant is liable as a principal "when he consciously shares in any criminal act, whether or not there is a conspiracy. And if a conspiracy is also charged, it makes no difference so far as aiding and abetting is concerned whether the substantive offense is done pursuant to the conspiracy." *Id.* at 620, 69 S.Ct. at 770.

Having defined the rule of criminal responsibility imposed by the "aiding and abetting" offense, the Court identified the two general components of aiding and abetting as an act by a defendant which contributes to the execution of a crime and the intent, demonstrated by his action, to make the crime succeed. In doing so, the Court in *Nye* adopted the pronouncement of Judge Learned Hand in the seminal case of *United States v. Peoni*, 100 F.2d 401 (2d Cir.1938), wherein Judge Hand stated that to aid and abet another to commit the offense it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Id.* at 402. This formulation has been adopted in this Circuit. *See, e.g., United States v. Quinn*, 901 F.2d 522, 530 n. 6 (6th Cir. 1990). Briefly summarized, the proof must show association with and participation *in the underlying or substantive crime*. These basic principles of "aiding and abetting" were enunciated long ago and have remained undisturbed throughout the years.

To prove the association element of the aiding and abetting offense, the evidence must demonstrate that the defendant actually or constructively shared in the criminal intent of the principle to commit the underlying or substantive criminal offense, *i.e.*, that the defendant had a "community of unlawful purpose" with the principal at the time the underlying act or acts were committed. *Johnson v. United States*, 195 F.2d 673, 675 (8th Cir.1952). The aider and abettor, however, need not have the exact intent as a principal because the "community of unlawful intent" does not rise to the level of agreement. *United States v. Beck*, 615 F.2d 441, 449 (7th Cir.1980) (citing *United States v. Longano*, 511 F.2d 1 (7th Cir.), *cert. denied*, 423 U.S. 850, 96 S.Ct. 94, 46 L.Ed.2d 74 (1975)). Because the requisite criminal intent is often difficult to demonstrate by direct evidence, it may be inferred from the totality of the facts and circumstances attending the substantive crime. Accordingly, there emerges an interconnection or interplay between the requisite proof of "association" and the less difficult level of proof required to develop the element of "participation" in a prosecution for aiding and abetting. *See Beck*, 615 F.2d at 449 ("A high level of activity need not be shown to prove participation....").

If it appears that a defendant was actually or constructively present during the commission of the substantive crime charged for the purpose of assisting therein (manufacturing and conspiring to manufacture marijuana in the instant case), and performs some overt act to further the success of that underlying criminal venture, then the element of participation with respect to the enhancing firearm offense has been satisfied. As a myriad of section 924(c) cases have illustrated, the focus in a firearms prosecution is not on the presence of a gun, *per se*, but is rather on the integral relationship that the weapon bears to the commission of the underlying criminal conduct. *See United States v. Acosta–Cazares*, 878 F.2d 945, 951–52 (6th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989); *United States v. Robinson*, 857 F.2d 1006, 1010 (5th Cir. 1988); *United States v. Matra*, 841 F.2d 837, 842 (8th Cir.1988); *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985); *United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir.1985); *United States v. Grant*, 545 F.2d 1309, 1312–13 (2d Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977); *United States v. Barber*, 594 F.2d 1242 (9th Cir.), *cert. denied*, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979). *See also United States v. Moore*, 580 F.2d 360, 362 (9th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978) (same, in context of bank robbery).[3] Therefore, it is appropriate when addressing an aiding and abetting charge under 18 U.S.C. § 2 and section 924(c) not to explore the defendant's "association" and "participation" with respect to the use or carrying of the weapon, *per se*, but rather to focus on the defendant's conduct with respect to the underlying narcotics offense or crime of violence.

The majority opinion takes no issue with the jury's finding that the requisite element of "association" of the aiding and abetting verdict had been satisfied, but advances a factually insupportable and conclusory opinion that the evidence was insufficient with respect to Morrow's "partic-

ipation" in the section 924(c) firearms offense. In rationalizing its conclusion that there was insufficient evidence of "participation," the majority avoids comment on the overwhelming evidence: 1) that Morrow engaged in affirmative conduct and committed overt acts designed to aid in the success of the substantive criminal offense of manufacturing marijuana; 2) that he was obviously aware that Mooneyham was carrying a firearm during and in relation to the drug manufacturing venture; and 3) that he constructively possessed the weapon, either as an "aider and abettor" (as the government elected to characterize him in the indictment) or as a principal (as established by the evidence).

Thus the ultimate issue for resolution in this appellate review of Morrow's jury conviction on Count III of the indictment may be distilled to a determination of whether, from the totality of the proof bearing upon the charges, the jury could have concluded beyond a reasonable doubt: 1) that Morrow's participation in the substantive underlying offense of manufacturing marijuana had been demonstrated by a course of affirmative conduct, such as the performance of some overt act or series of overt acts to further the success of the criminal venture of manufacturing marijuana; and 2) that Morrow knew that Mooneyham possessed the gun.

The majority's conclusion that the government failed to produce any evidence to demonstrate Morrow's *participation* in the underlying substantive criminal enterprise of manufacturing marijuana, and that absent a showing of some active participation in or encouragement of the underlying offense of manufacturing marijuana the aiding and abetting conviction cannot stand, is eloquently silent as to the reasons that may be advanced in its support, and the opinion appears to be in direct conflict with existing legal precedent concurred in by every other circuit that has addressed the proper interpretation of section 924(c).

---

**3.** Armed bank robbery provides an analogue to a section 924(c) charge; *i.e.,* unarmed drug traf-

ficking is to armed drug trafficking what unarmed bank robbery is to armed bank robbery.

The transcript of Morrow's trial testimony illustrates the conflict that exists between the majority's rather innocuous depiction of his involvement in this enterprise and the true extent and nature of his overt activities in advancing the success of his joint marijuana manufacturing venture with Mooneyham.

The evidence disclosed that on the morning of Sunday, July 31, 1987, defendant Morrow traveled to the residence of defendant Mooneyham, situated in Hartford, Tennessee. The defendants, in the presence of each other, changed from their street clothing into camouflage apparel and Mooneyham strapped a holstered chrome-plated .22 caliber revolver around his waist, where it remained plainly visible throughout the ensuing events. The two men thereupon mounted two camouflaged all-terrain vehicles (ATVs) and motored directly to their predetermined destination in the Cherokee National Forest, Cocke County, Tennessee, an area more specifically identifiable as Hall Top Tower, situated approximately ten miles from the city of Newport, Tennessee.

After leaving the main highway, Route 207, the defendant's drove their ATVs along a gravel road leading to Hall Top Tower. They left the gravel road before reaching Hall Top Tower by turning onto an overgrown abandoned logging roadway impassable to automobiles and proceeded for approximately another mile, at which point the logging road came to a dead end in more densely overgrown wooded terrain. The defendants parked their ATVs and, on this hot July summer morning, concealed their faces by donning full woolen ski masks with only eye and nose apertures and traversed the remaining half mile of virtually impassable terrain over two steep mountain ridges on foot to a well-concealed clearing.

Their destination consisted of two meticulously planted, well-tended, well-tilled and fertilized, painstakingly cultivated stands of healthy marijuana plants. A rototiller, doublebladed ax, buckets, fertilizer and a chain saw were present on the site. Bags of moth balls designed to repel rodents and deer were hanging from the trees surrounding the two marijuana patches. Forest Rangers Jowers and Bowman testified that they found a proliferation of Marlboro cigarette butts strewn throughout the two marijuana patches. They also noted that several of the large trees on the margins of the marijuana patches had been "girdled" by a chain saw.[4]

Jowers and Bowman positioned themselves at opposite ends of the first marijuana planting to surveil the site. The rangers testified that, from a distance of about 25 feet, they observed the defendants (later identified as Morrow and Mooneyham), complete with camouflage gear and ski masks, enter the clearing together at approximately 10:30 a.m. One defendant, later identified as Mooneyham, had a clearly visible holstered revolver strapped to his waist. The chrome-plated gun reflected sunlight.

The two defendants, working in close proximity to each other, immediately began to efficiently and systematically cull the twelve-row marijuana patch of all its male plants. It was later determined from statements volunteered by both Mooneyham and Morrow that male plants were identified by a seed-like pod at the top of the plant, which appendage, they explained, was the male sex organ. They also explained that the male plants had to be removed approximately a month before harvesting the crop so as to increase the tetrahydrocannabinol content of the remaining female plants.

The rangers maintained their surveillance for about fifteen to twenty minutes, during which time the men expeditiously removed approximately nineteen male

---

**4.** Girdling is accomplished by cutting into the cambium layer of a tree's bark, through which it receives nutrients to sustain its growth and life. Girdling disrupts the tree's flow of nutrients to sustain its life and the tree eventually loses its leaves and dies. However, it remains standing in its defoliated state for years. Testimony reflected that marijuana farmers defoliate trees to permit the infiltration of sunlight necessary for the growth of the marijuana plants without disturbing the camouflage that the trees' branches afford to conceal a marijuana field from aerial surveillance and photography.

plants, which were neatly deposited at the perimeter of the patch they were working (there was a second patch of approximately the same size in the immediate proximity). Rangers Jowers and Bowman then abandoned their positions of concealment and approached the two men from opposite ends of the field and identified themselves as law officers. Both defendants bolted. Mooneyham evaded ranger Bowman at the far end of the field and disappeared into the brush after discarding his weapon. Bowman pursued him for some distance before taking him into custody. The chrome-plated revolver, fully operational and loaded with hollow-nosed ammunition, was later retrieved from the underbrush. Jowers apprehended Morrow. A search of Mooneyham surfaced a package of Marlboro cigarettes.

After the defendants removed their ski masks and were advised of their *Miranda* rights, they told the officers that they had no ownership or other association with the two marijuana plantings and that their presence at the site was to gather evidence incriminating a nondescript individual identified only as Eddie Hall, who was purportedly the owner of the marijuana fields. It was during this conversation that the defendants exhibited an extensive, sophisticated knowledge of marijuana, its successful cultivation and the violence and hazards attendant to its propagation and sale. Both defendants explained that their ski masks were part of an effort to conceal their identities not from law enforcement authorities, but rather from drug dealers, poachers or the owners of the marijuana. On examination, Morrow expressed the fear he felt when he observed Ranger Jowers with his weapon drawn:

Q. And it never dawned on you, you're telling this jury, that it was not unusual to put a hood over your head and to stand in the middle of marijuana patch in upper east Tennessee? That didn't cause you any type of suspicion?

A. Oh yeah, I guess it looked suspicious, it was for my own protection.

Q. Protection to put a hood over your head?

A. Yes.

Q. Whose protection?

A. Mr. Malcolm Jowers could be individual owned that patch, and he could act like he's police too, but if it wasn't, like I said, he could just come out and blowed my brains away.

On the same subject Mooneyham testified:

Q. Was it just coincidence when you decided on July 31st, 1988, just coincidence when Mr. Morrow showed up, you were going to take this trip to the marijuana patch, and just coincidence you had two masks then?

A. No coincidence. I had two masks with them, I took them in on purpose because I had in mind what I was going to do.

Q. What was purpose of putting mask over your head?

A. Lot of people lays with their marijuana, and if, in fact, someone was there, and they knew who it was, I feared for my safety, my family's safety.

Q. Wouldn't you sit in the patch, surveil it for a while, see if anybody's there, rather than walking from four-wheelers down to patch with your mask on?

A. Been several different, if anyone had been there, and it had been safe, different, if they wanted to shoot me, they would have, or do whatever.

Morrow's image, as developed by the record, was that of an individual who was versed in the agriculture, harvesting, and trafficking of marijuana. He admittedly had incorporated his knowledge on the subject into a high school "book report." Both defendants were keenly aware of the use of firearms as a means of safeguarding and facilitating illegal drug transactions and as an integral tool for protecting persons and drugs from competition or poachers. Mooneyham's holstered, chrome-plated revolver had been clearly visible from the time when the two men, in the presence of each other, donned their camouflaged clothing until they were arrested. To conclude that Morrow's course of conduct and overt activities on the morning of Sunday July 31, 1988 did not demonstrate an affirmative *"participation"* designed to aid and abet in the success of the substantive

or underlying offense of manufacturing marijuana is to ignore the evidence and the reasonable inferences arising therefrom.

The brief recital of the factual history of this case exposes my reasons for dissenting. In the instant case, Morrow was, from the outset, acting in concert with Mooneyham. Each defendant was a principal who aided and abetted the other in a joint venture with a common design. Each was intimately involved with the physical execution of all acts necessary to ensure the ultimate success of the underlying substantive offense of manufacturing marijuana, which included, as an integral means of protecting their drugs and facilitating their illegal operation, the carrying of firearms.

Accordingly, I would, without hesitation, enter my dissent to the majority's vacation of the jury's verdict convicting Timothy Wayne Morrow of Count III of the indictment and affirm the jury's verdict.

I would, therefore dissent from the part of the panel majority's opinion that vacates the jury verdict convicting both Mooneyham and Morrow of Count III of the indictment, and concur in the balance of the majority opinion. In sum, I would affirm the jury verdict and the trial court's judgment thereon in its entirety.